LaROSE, Judge.
N.L.E. seeks certiorari review of the trial court’s order requiring chemotherapy and radiation treatment for her son. We deny the petition for the reasons explained below.
N.L.E.’s son, D.G., has a rare form of cancer. In late February and March 2007, after removal of a tumor, D.G.’s two physicians recommended chemotherapy. At that' time, N.L.E. researched alternative treatments. In March, a third physician advised N.L.E. that D.G.’s cancer was curable and that he should undergo chemotherapy.
On April 5, 2007, a fourth physician insisted that D.G. begin radiation treatments. N.L.E. refused to sign the authorization; she wanted another opinion. On April 11, 2007, the Department of Children and Family Services (DCF) filed a petition for dependency and an “Emergency Motion for Medical Treatment,” seeking immediate chemotherapy and radiation treatment for D.G. N.L.E. received the motion and notice of hearing for arraignment just a few hours before a scheduled April 11 hearing.
The hearing began with the judge, a court reporter, an assistant state attorney representing DCF, and .N.L.E. present. Attorney Linda Clark was “told to call in” and appeared by telephone. Our record is unclear as to whether Ms. Clark actually had been appointed to represent N.L.E. We do know, however, that she had spoken with N.L.E. earlier. Ms. Clark advised the trial court as follows:
[N.L.E.] definitely would like [D.G.] to be treated appropriately....
[N.L.E.] does disagree with the recommendations that have been made and, in fact, there is a third doctor who also has a different opinion.
Toward that end, [N.L.E.] is trying to come to a reasonable conclusion as to the best treatment for him and has made, arrangements to see yet another doctor tomorrow afternoon or tomorrow morning....
... [I]f the Court is looking for an answer today, we’d just like to ask that the Court allow her to obtain the opinion of another medical doctor....
*488 Thereafter, the trial court asked N.L.E. if she wanted appointed counsel. N.L.E. stated, “That’s fíne.” But, when asked if she could afford to hire her own attorney, N.L.E. stated that she could and would prefer to find her own attorney. The trial court then disconnected Ms. Clark’s telephone attendance.[1] Without objection from N.L.E., the trial court proceeded with the hearing.
DCF attempted to present telephone testimony of three physicians who examined D.G. One was unavailable. A second physician could not testify because no notary was present with him to administer an oath. The third physician, who earlier recommended radiation treatment, qualified, without objection, as a pediatric oncology expert. He recommended chemotherapy and radiation therapy as the only treatments available to save D.G.’s life.
Next, a physician with whom N.L.E. had spoken testified by telephone. He was a general practitioner who had not examined D.G. N.L.E. merely had asked him if there were blood tests that could be done on D.G.[2] He told N.L.E. that such tests were available and observed that results could be obtained in less than a week. He had no opinion about the need for radiation or chemotherapy.
N.L.E. told the trial court that D.G.’s surgeon believed the cancer was localized and that postoperative test results were favorable. N.L.E. wanted to avoid subjecting her son to chemotherapy and radiation if less aggressive therapies were appropriate. N.L.E. did not identify other physicians who might examine D.G., nor did she describe other effective therapies available to D.G.
The trial court found the oncologist’s testimony compelling and ordered radiation and chemotherapy treatment for D.G. The trial court directed N.L.E. to contact a specified physician within twenty-four hours to make the necessary arrangements.
The trial court then provided N.L.E. with a copy of the dependency petition and advised her of the right to an attorney.[3] Despite her prior representations, N.L.E. said that she needed an appointed attorney. The trial court telephoned attorney Clark and stated, “N.L.E. has changed her mind in the dependency matter.” The trial court advised Ms. Clark of its ruling on D.G.’s treatment. Ms. Clark voiced no objection. N.L.E. advised the trial court that she wished to speak with her attorney before making a statement about the dependency petition. The trial court continued the arraignment.
In her certiorari petition, N.L.E. argues that the trial court lacked jurisdiction over D.G. and that DCF filed the dependency petition as a pretext to invoke jurisdiction. She argues further that no medical emergency existed and that she was deprived of due process to present her evidence. Finally, she contends that the evidence presented did not justify DCF’s intervention and that DCF violated D.G.’s privacy rights by allowing the oncologist to divulge *489 confidential medical information without a subpoena and notice to N.L.E. or D.G.[4]
We understand N.L.E.’s concerns about her son’s health and do not doubt her sincerity in wanting to avoid the potentially drastic side effects of radiation and chemotherapy. Sympathetic as we may be, the scope of our certiorari review is limited. We may grant N.L.E.’s petition only if the trial court (1) departed from the essential requirements of the law, (2)resulting in "material injury, (8) that cannot be corrected on postjudgment appeal. See DeLoach v. Aird, 32 Fla. L. Weekly D2140, — So.2d -, 2007 WL 2552071 (Fla. 2d DCA Sept. 7, 2007) (citing Parkway Bank v. Ft Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995)). “In the absence of a showing that the lower court exceeded its jurisdiction or proceeded in derogation of the essential requirements of law certiorari will not lie to the [district [c]ourt of [alp-peal.” Holden v. City of Fort Lauderdale, 286 So.2d 218, 219 (Fla. 4th DCA 1973) (citing State v. Smith, 240 So.2d 807, 809 (Fla.1970)). Applying this standard, we can offer N.L.E. no relief.
N.L.E. did not present to the trial court the issues she advances here. “ ‘Except in cases of fundamental error, appellate courts will not consider an issue that has not been presented to the lower court in a manner that specifically addresses the contentions asserted.’” State v. Hunton, 699 So.2d 320, 321 (Fla. 2d DCA 1997) (quoting Novels v. State, 685 So.2d 856, 857 (Fla. 2d DCA 1995)). We will not speculate as to whether appointed counsel could have preserved N.L.E.’s arguments for our review. N.L.E. had the opportunity but declined to have attorney Clark represent her in connection with the emergency motion. We see no fundamental error regarding N.L.E.’s jurisdictional and privacy arguments. Thus we deny the petition on these issues without further discussion.
As for the “emergency” nature of the motion, the presentation of evidence and the need for treatment, N.L.E. essentially mounts a broad-brush due process attack on the form of the hearing claiming fundamental error. We cannot accept her position. The unrebutted testimony established that D.G. needed prompt chemotherapy and radiation treatment. Despite the apparent haste with which the trial court proceeded, we see no departure from the essential .requirements of law, much less fundamental error.
According to DCF, D.G. suffered from medical neglect. Section 39.01(31), Florida Statutes (2006), provides:
“Harm” to a child’s health or welfare can occur when any person:
[[Image here]]
(f) Neglects the child. Within the context of the definition of “harm,” the term “neglects the child” means that the parent or other person responsible for the child’s welfare fails to supply the child with adequate ... health care, although financially able to do so or although offered.financial or other means to do so.
See also § 39.01(43). “ ‘Necessary medical treatment’ means care which is necessary within a reasonable degree of medical certainty to prevent the deterioration of a child’s condition or to alleviate immediate pain of a child.” § 39.01(42).
*490 Ordinarily, decisions regarding the care and upbringing of minor children are left to the parents. See M.N. v. S. Baptist Hosp. of Fla., Inc., 648 So.2d 769, 770 (Fla. 1st DCA 1994) (citing Padgett v. Dep’t of Health and Rehab. Servs., 577 So.2d 565 (Fla.1991)).
But the parents’ rights are not absolute, as the state has parens patriae authority to ensure that children receive reasonable medical treatment which is necessary for the preservation of life. And as between parent and child, the ultimate welfare of the child is the controlling- factor. Indeed, the policy of advancing the best interests of the child is well rooted in this state and guides the courts in many diverse contexts.
Id. (citations omitted).
As explained in M.N., the court must balance competing interests. Id. at 771. It must consider the parent’s interest in making fundamental decisions about a child’s care, the State’s interest in preserving human life, and the child’s own welfare and best interests in light of the severity of the child’s illness, the likelihood of effectiveness of the proposed treatment, the child’s chances of survival with and without such treatment, and the invasiveness and nature of the treatments with regard to its effect on the child. See id. The trial court balanced these interests properly when faced with D.G.’s situation. See J.V. v. State, 516 So.2d 1133, 1133-34 (Fla. 1st DCA 1987) (finding no abuse of discretion in court’s authorization of blood transfusions as medically necessary, but finding that parents’ actions did not support a finding of dependency by abandonment, neglect, or abuse); see also In re J.W., 890 So.2d 337, 340 (Fla. 2d DCA 2004) (holding that clear and convincing evidence is standard of proof required in context of ordering emergency mental health treatment).
Unquestionably, N.L.E. received short notice of the hearing. Typically, a summons and notice of hearing provides at least seventy-two hours’ notice. See § 39.502(4). Twenty-four hours’ notice of an advisory hearing in a termination of parental rights case has been held insufficient notice as a matter of law. See J.B. v. Dep’t of Children & Family Servs., 768 So.2d 1060, 1066-67, 1066 n. 4 (Fla.2000). However, for shelter hearings and hearings resulting from medical emergencies, notice must be “that most likely to result in actual notice to the parents.” § 39.502(1). N.L.E. had notice of the hearing. And, the medical exigencies demanded prompt attention by the trial court.
Although N.L.E. argues that there was no real emergency, the oncology expert testified that immediate radiation and chemotherapy was necessary. We also observe that N.L.E. requested no continuance. Even if attorney Clark’s comments can be read as a request for more time, the trial court certainly did not depart from the essential requirements of law. N.L.E. chose to proceed on her own and did not ask for additional time. She did not identify other potential witnesses who she would secure, nor did she provide the substance of any further testimony. Alas, N.L.E. was grasping for alternative treatments. But, the medical evidence before the trial court indicated that time was not on D.G.’s side. Additionally, our record shows that N.L.E. presented some medical testimony at the hearing. The physician who testified for her, however, had not seen D.G. and had no opinion on the need for chemotherapy and radiation. Even N.L.E.’s comments that D.G.’s surgeon found the cancer to be localized offered no hint that chemotherapy and radiation were not medically indicated. Thus, although the hearing proceeded quickly upon short *491 notice, N.L.E. suffered no undue prejudice.
The trial court’s order constitutes neither fundamental error nor a departure from the essential requirements of law. Accordingly, we deny N.L.E.’s petition.
Petition for writ of certiorari denied.
DAVIS and VILLANTI, JJ., Concur.

.We note that N.L.E. may not have been entitled, constitutionally, to appointed counsel in connection with the emergency motion. See S.B. v. Dep’t of Children and Families, 851 So.2d 689, 693-94 (Fla.2003); C.L.R. v. Dep’t of Children and Families, 913 So.2d 764, 766 (Fla. 5th DCA 2005).

. We glean from the record that N.L.E. believed that the removal of D.G.’s tumor left him cancer-free.

. The record reflects that DCF served the petition on someone residing at N.L.E.’s home. We cannot determine if she saw it prior to the hearing.

. See Health Ins. Portability and Accountability Act (HIPAA), Pub.L. No.104-191, 110 Stat. 1936 (1996) (codified at 42 U.S.C. § 1320d-d8); §§ 395.3025, 456.057, Fla. Stat. (2006) (providing for confidentiality of patient records but allowing for legal review upon subpoena and notice). Compare 45 C.F.R. 164.512(b)(l)(ii) (2002); § 39.201 (l)(b)l, Fla. Stat. (2006) (providing for mandatory disclosure of certain protected health- information).