1 So.3d 1200 (2009)
Alejandro ROSADO, Appellant,
v.
DAIMLERCHRYSLER FINANCIAL SERVICES TRUST, a/k/a DCFS Trust; LaMondue Law Firm, PCL; Carl C. LaMondue; and Terrell A. Parham, Appellees.
No. 2D07-3690.
District Court of Appeal of Florida, Second District.
February 6, 2009.
*1201 Matthew E. Kaplan of Kaplan and Freedman, P.A., Miami; and Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, for Appellant.
Michael B. Buckley, Lauren S. Curtis, and Rebecca O'Dell Townsend of Buckley & Fudge, P.A., St. Petersburg, for Appellee DCFS Trust.
No appearance for other Appellees.
PER CURIAM.
Alejandro Rosado appeals a partial final summary judgment dismissing his claim against DaimlerChrysler Financial Services Trust (DaimlerChrysler). Mr. Rosado sued DaimlerChrysler for injuries he sustained in an automobile accident because DaimlerChrysler was the owner and lessor of the car driven by the person allegedly at fault in this accident. Mr. Rosado claimed that DaimlerChrysler was liable because it had failed to ensure that the vehicle was covered by insurance to the limits of liability described in section *1202 324.021(9)(b)(1), Florida Statutes (2002), at the time of the accident. The trial court entered summary judgment in favor of DaimlerChrysler on the theory that Florida law had been preempted by 49 U.S.C. § 30106, commonly referred to as the Graves Amendment, which shields long-term lessors and rental car companies from vicarious liability imposed under state law under some circumstances.
This appears to be the first case in which a court has addressed the application of the Graves Amendment to a long-term automobile lease under section 324.021(9)(b)(1). The Amendment's application, however, has been addressed at length in reference to rental cars under section 324.021(9)(b)(2). See Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242 (11th Cir.2008); Dupuis v. Vanguard Car Rental USA, Inc., 510 F.Supp.2d 980 (M.D.Fla.2007); Karling v. Budget Rent A Car Sys., Inc., 33 Fla. L. Weekly D2777, 2 So.3d 354, 2008 WL 5100530 (Fla. 5th DCA Dec. 5, 2008); Tocha v. Richardson, 995 So.2d 1100 (Fla. 4th DCA 2008); Vargas v. Enter. Leasing Co., 993 So.2d 614 (Fla. 4th DCA 2008); Kumarsingh v. PV Holding Corp., 983 So.2d 599 (Fla. 3d DCA 2008). Much of that discussion is relevant to this case, and it convinces us that the trial court properly entered summary judgment in favor of DaimlerChrysler.

I. THE FACTS
On June 29, 2003, Terrell Parham drove a car across the median on U.S. Highway 27 near Haines City and collided with a car driven by Alejandro Rosado. Mr. Rosado sustained serious injuries.
At the time of the accident, Mr. Parham was a Polk County resident who had recently graduated from Virginia Polytechnic Institute and State University (Virginia Tech), where he played football. The car that Mr. Parham was operating was a Mercedes Benz C230 that was owned by DaimlerChrysler Financial Services Trust. It had been leased to the LaMondue Law Firm in Virginia on January 15, 2003, for a period of four years. The connection between the LaMondue Law Firm and Mr. Parham is not disclosed in our record except to the extent that Mr. Parham is not an employee of the law firm. The law firm had apparently given the car to Mr. Parham to use, and there is no claim that he was not a permissive user and lawful bailee of this car at the time of the accident. The testimony in the record indicates that the car had been in Florida for only a short time. The car was registered in Virginia, and we assume for purposes of this opinion that it was subject to the requirements, if any, of Virginia law concerning compulsory liability insurance and financial responsibility.
The lease between DaimlerChrysler and the LaMondue Law Firm required the law firm, as lessee, to insure the car for not less than $100,000 per person and $300,000 per accident in bodily injury coverage and $50,000 in property coverage. At the end of the lease document, the lessor verified that it had determined that insurance coverage was provided by United Services Automobile Association.[1] The record indicates that immediately before this accident, insurance in this amount was actually provided by Progressive Insurance Company, but that insurance policy lapsed for nonpayment the day before the accident.
Mr. Rosado filed his lawsuit in Polk County against the LaMondue Law Firm, Mr. LaMondue, Mr. Parham, and DaimlerChrysler. The claim against DaimlerChrysler *1203 alleged that it was vicariously liable for Mr. Parham's negligent operation of the car under Florida's dangerous instrumentality doctrine because it had failed to comply with the insurance requirements of section 324.021(9)(b)(1).
DaimlerChrysler moved for summary judgment in August 2006. Although it argued in part that its liability should be based on Virginia tort law, it also argued that Florida law, if it applied, was preempted by the Graves Amendment, which we describe in greater detail below.[2] After Judge William Terrell Hodges issued a decision interpreting the Graves Amendment to preempt section 341.021(9)(b)(2) as applied to a Florida short-term rental agreement in Garcia v. Vanguard Car Rental USA, Inc., 510 F.Supp.2d 821 (M.D.Fla.2007), aff'd, 540 F.3d 1242 (11th Cir.2008), the trial court in this case granted summary judgment in favor of DaimlerChrysler, relying extensively on the Garcia decision. Mr. Rosado appealed the summary judgment to this court. Recently, while this appeal was pending, the Eleventh Circuit affirmed Judge Hodges' decision in Garcia. Garcia, 540 F.3d at 1244-45.

II. THE GRAVES AMENDMENT
The Graves Amendment was enacted as a federal statute effective August 10, 2005. See Garcia, 510 F.Supp.2d at 829. The Graves Amendment applies to any "action commenced on or after [its] date of enactment... without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date...." 49 U.S.C. § 30106(c). It provides, in pertinent part:
Section 30106. Rented or leased motor vehicle safety and responsibility.
(a) In general.An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if
(1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
(2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).
(b) Financial responsibility laws. Nothing in this section supersedes the law of any State or political subdivision thereof
(1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or
(2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.
(c) Applicability and effective date. Notwithstanding any other provision of law, this section shall apply with respect to any action commenced on or after the date of enactment of this section without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before such date of enactment.
*1204 Mr. Rosado challenges the application of this preemptive statute on three fronts. First, he argues that the Graves Amendment is unconstitutional as a violation of the Commerce Clause. The Eleventh Circuit rejected that argument in Garcia. 540 F.3d at 1253. This issue has been raised and rejected in many other cases. See, e.g., Flagler v. Budget Rent A Car Sys., Inc., 538 F.Supp.2d 557, 559 (E.D.N.Y.2008) (holding the Graves Amendment to be constitutional under the second and third Lopez[3] categories); Berkan v. Penske Truck Leasing Canada, Inc., 535 F.Supp.2d 341, 345 (W.D.N.Y. 2008) (same); Jasman v. DTG Operations, Inc., 533 F.Supp.2d 753, 757 (W.D.Mich. 2008) (holding the Graves Amendment to be constitutional under all three Lopez categories); Garcia, 510 F.Supp.2d at 835 (same); Dupuis v. Vanguard Car Rental USA, Inc., 510 F.Supp.2d 980, 985 (M.D.Fla.2007) . (holding the Graves Amendment to be constitutional under the second Lopez category). We likewise reject this argument, relying upon the explanations in Garcia and the other existing precedents.
Second, Mr. Rosado maintains that the Graves Amendment does not apply to this case because both the accident and the filing of this lawsuit occurred before the enactment of the Graves Amendment, even though DaimlerChrysler was joined as a defendant after the enactment.[4] We decline to consider this issue because it was not argued in the trial court and is not the type of error that can be raised for the first time on appeal as a fundamental error. See N.L.E. v. Dep't of Children & Family Servs., 970 So.2d 486 (Fla. 2d DCA 2007) (holding that, absent fundamental error, petitioner could not present for first time on appeal issues not raised before the trial court).
Finally, Mr. Rosado argues that the Graves Amendment does not limit DaimlerChrysler's liability in this context because this federal statute contains two exceptions to the reach of its preemption. This is the issue that cannot be resolved without additional analysis.

III. THE GRAVES AMENDMENT PREEMPTS SUBSECTION 324.021(9)(b)(1)
Subsection 324.021(9)(b) is a definitional provision within chapter 324 of the Florida Statutes, which is entitled "Financial Responsibility." It states:
(9) OWNER; OWNER/LESSOR.
....
(b) Owner/lessor.Notwithstanding any other provision of the Florida Statutes or existing case law:
1. The lessor, under an agreement to lease a motor vehicle for 1 year or longer which requires the lessee to obtain insurance acceptable to the lessor which contains limits not less than $100,000/$300,000 bodily injury liability and $50,000 property damage liability or not less than $500,000 combined property damage liability and bodily injury liability, shall not be deemed the owner of said motor vehicle for the purpose of determining financial responsibility for the operation of said motor vehicle or for the acts of the operator in connection *1205 therewith; further, this subparagraph shall be applicable so long as the insurance meeting these requirements is in effect. The insurance meeting such requirements may be obtained by the lessor or lessee, provided, if such insurance is obtained by the lessor, the combined coverage for bodily injury liability and property damage liability shall contain limits of not less than $1 million and may be provided by a lessor's blanket policy.
2. The lessor, under an agreement to rent or lease a motor vehicle for a period of less than 1 year, shall be deemed the owner of the motor vehicle for the purpose of determining liability for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person and up to $300,000 per incident for bodily injury and up to $50,000 for property damage. If the lessee or the operator of the motor vehicle is uninsured or has any insurance with limits less than $500,000 combined property damage and bodily injury liability, the lessor shall be liable for up to an additional $500,000 in economic damages only arising out of the use of the motor vehicle. The additional specified liability of the lessor for economic damages shall be reduced by amounts actually recovered from the lessee, from the operator, and from any insurance or self-insurance covering the lessee or operator. Nothing in this subparagraph shall be construed to affect the liability of the lessor for its own negligence.
§ 324.021(9)(b).
Subsection (b)(2) applies to rental cars and essentially makes the rental car company, as owner, liable up to $800,000, depending upon the insurance coverage on the leased vehicle and the nature of the damages. In excellent discussions, Judge Hodges, in Garcia, 510 F.Supp.2d at 829-33, and Judge Gross, in Vargas, 993 So.2d at 618-21, have concluded that this definitional section does not "impos[e] financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle" and does not "impose liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law," as provided within the savings clause of 49 U.S.C. § 30106(b). Accordingly, both courts concluded that the exceptions to the Graves Amendment did not apply.
Subsection (b)(1) is similar in that it provides that the lease car company is not deemed the owner for financial responsibility or for vicarious liability so long as either the lessee has the designated policy of liability insurance in place or the lessor has a $1,000,000 blanket policy. Like subsection (b)(2), this subsection does not "impos[e] financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle" and does not "impose liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law." It merely gives the leasing company the option to have insurance in place to avoid liability in Florida under the dangerous instrumentality doctrine. Because the statute does not compel a lease car company to have certain "insurance standards," this statute does not impose liability for a "failure" to meet insurance standards that are only optional.
We recognize, as the dissent argues, that the uniqueness of Florida's dangerous instrumentality doctrine makes the application *1206 of the Graves Amendment more questionable in Florida. From a practical perspective, the dissent may accurately explain the purpose and function of section 324.021(9)(b)(1), but we conclude that the statute's plain language requires the ruling that we reach today. However, we certify to the supreme court the following question of great public importance:
DOES THE GRAVES AMENDMENT, 49 U.S.C. § 30106, PREEMPT SECTION 324.021(9)(b)(1), FLORIDA STATUTES (2002)?
Affirmed.
VILLANTI and LAROSE, JJ., Concur.
ALTENBERND, J., Concurs in part and dissents in part with opinion.
ALTENBERND, Judge, Concurring in part and dissenting in part.
I agree with the majority that the Graves Amendment, 49 U.S.C. § 30106, is not unconstitutional and that section 324.021(9)(b)(1) is not excepted from this federal preemption statute by virtue of the exception stated in subsection (b)(1) of the Graves Amendment. On the other hand, I conclude that section 324.021(9)(b)(1), when examined in conjunction with Florida's unique dangerous instrumentality doctrine, is effectively a statute imposing liability for failure to meet liability insurance requirements. It appears to me to be the type of statute that Congress intended to allow states to enact, as provided within subsection (b)(2) of the Graves Amendment. It fulfills both the purposes and functions of the type of statute that Congress would allow a state to enact under the common law of the other forty-nine states.
There does not appear to be any serious dispute that a state could enact a statute that provided:
Lease car companies doing business in this state shall ensure that either the lessee or the lease car company provides a policy of liability insurance of not less than $500,000 combined property damage liability and bodily injury liability for each lease car operated in this state. Failure to provide this insurance shall render the lease car company vicariously liable for all damages caused by the negligence of the operator of the lease car.
Such a statute would squarely fit within the exception of subsection (b)(2) of the Graves Amendment. Under the common law of apparently every state except Florida, such a statute would be necessary to make the owner vicariously liable for the negligent acts of the operator because the common law did not impose such liability. See, e.g., Morris v. Snappy Car Rental, Inc., 84 N.Y.2d 21, 614 N.Y.S.2d 362, 637 N.E.2d 253, 254-55 (1994) (explaining that New York's legislature enacted Vehicle and Traffic Laws section 388 to change the common law rule and to make a vehicle's owner vicariously liable for the negligence of a person operating the car with the permission, express or implied, of the owner); see also 8 Am.Jur.2d Automobiles and Highway Traffic § 403 (2007).
If one examines the history of the dangerous instrumentality doctrine and the efforts of the rental and car leasing companies to obtain a special exemption from that doctrine, it becomes more clear that section 324.021(9)(b)(1) is the equivalent of the above-quoted hypothetical statute.

I. THE DEVELOPMENT OF THE DANGEROUS INSTRUMENTALITY DOCTRINE IN FLORIDA PRIOR TO 1989
Judge Hodges, in his opinion in Garcia, provided an excellent, brief description of Florida's development of the dangerous *1207 instrumentality doctrine. I repeat that description here.
Florida's vicarious liability doctrine as it pertains to lessors of motor vehicles is largely a creation of common law, and is otherwise known as the "dangerous instrumentality doctrine." The dangerous instrumentality concept was first applied to motor vehicles by the Florida Supreme Court in 1920. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). The doctrine "imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another." Estate of Villanueva ex rel. Villanueva v. Youngblood, 927 So.2d 955 (Fla.Dist.Ct.App.2006); see also Southern Cotton, 86 So. at 637. The dangerous instrumentality doctrine was judicially adopted based on public policy concerns:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways. The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions.

Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000) (quoting Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990)).
The Florida Supreme Court extended the dangerous instrumentality doctrine to lessors, thereby making them vicariously liable for the lessee's negligent operation of the motor vehicle, in 1959. Susco Car Rental System v. Leonard, 112 So.2d 832 (Fla.1959).
Garcia, 510 F.Supp.2d at 827. There is, incidentally, no question in my mind that, without the legislative enactment in section 324.021(9)(b), the Florida law related to the dangerous instrumentality doctrine would be preempted by the Graves Amendment.

II. THE DEVELOPMENT OF THE FINANCIAL RESPONSIBILITY STATUTES IN FLORIDA PRIOR TO 1989
Judge Gross, in Vargas, has done an excellent job describing the history and the nature of Florida's Financial Responsibility Act, chapter 324, Florida Statutes. Vargas, 993 So.2d at 618-21. I am inclined to believe, however, that financial responsibility laws are not the true focus of the issue presented by this case. Unlike many states where financial responsibility laws were enacted in conjunction with laws establishing some vicarious liability of motor vehicle owners, that vicarious liability had existed in Florida as a result of the dangerous instrumentality doctrine for more than a generation when the Florida Legislature first addressed the idea of financial responsibility. These laws do not create any compulsory insurance requirements for owners of typical cars whose drivers have been responsible. The most significant sanction imposed under these statutes is not the liability of the owner (which already existed in Florida under the dangerous instrumentality doctrine), but rather the loss of a driver's license or registration for someone who has not been financially responsible in the past. See § 324.051, Fla. Stat. (2008).
*1208 The significance of Florida's financial responsibility statutes was altered and reduced with the creation of no-fault automobile insurance. The definition of motor vehicle was amended in 1977 to provide that an automobile insured with no-fault insurance was not included within the definition of motor vehicle for purposes of financial responsibility in many instances. See Ch. 77-468, § 6, at 2061, Laws of Fla.
While financial responsibility statutes in Florida may have been a regulatory annoyance for rental and lease car companies, the real complaint of these companies was with Florida's dangerous instrumentality doctrine because it could make these large corporations subject to unlimited judgments for the damage and injury caused by their cars in Florida.

III. THE LEGISLATIVE RESPONSE IN 1986 IN FLORIDA ADDRESSING THE LIABILITY OF LONG-TERM LESSORS
In 1986, the Florida Legislature created section 324.021(9)(b) to exempt lease car companies from the dangerous instrumentality doctrine so long as the lessee maintained certain levels of liability insurance. Ch. 86-229, § 3, Laws of Fla. This bill did not deal with insurance or financial responsibility in general; it amended statutes affecting lessors of motor vehicles. This version of the statute provided no relief to rental car companies as opposed to long-term lessors. It also did not provide the option of a blanket liability policy. That language was added later by chapter 88-370, Laws of Florida, as a response to cases in which the statute was read literally to require a policy provided by the lessee in order for the lessor to escape the dangerous instrumentality doctrine. See Ady v. Am. Honda Fin. Corp., 675 So.2d 577 (Fla.1996).
This statute was odd in 1986, and it remains odd today in at least two respects. First, it purports to be a definition of "owner/lessor" for a statutory chapter dealing with financial responsibility, when in reality it is far more than a definition. Second, although one might expect that it was only a definition for purposes of Florida's statutory financial responsibility requirements because it is in chapter 324 and not in chapter 768, it actually establishes a major limitation on a common law negligence cause of action for the benefit of a narrow class of defendantsthose businesses who lease motor vehicles.[5]
After the enactment of this statute, a business that leased automobiles in Florida and complied with these statutory provisions was still the owner of the vehicles for many purposes, but it was not "deemed" the owner for either financial responsibility or for liability under the dangerous instrumentality doctrine. Examined from a practical or functional perspective, the legal owner of the leased or rented motor vehicle had no monetary exposure for risks associated with the use or operation of the motor vehicle so long as the prescribed insurance was in place. The "penalty" for failure to maintain the insurance was a return to unlimited liability under the dangerous instrumentality doctrine. See Ady, 675 So.2d at 581 (holding lessor was not entitled to the statutory exemption from the dangerous instrumentality doctrine where lessee failed to satisfy the requirement of section 324.021(9)(b)).
I admit that this statute in 1986 and today does not compel leasing companies to have minimum limits of insurance coverage. *1209 I am not convinced it is necessary for the statute to compel coverage to fit within the second exception to the Graves Amendment. Subsection (b)(2) exempts state laws "imposing liability on business entities engaged in the trade or business of... leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law." In Florida, the liability was imposed by common law and the statute provides an insurance option to avoid that liability. If a leasing company fails to meet the liability insurance requirements in section 324.021(9)(b)(1), then Florida common law as explained in Ady and earlier cases will impose liability on that business. In combination, the common law and section 324.021(9)(b)(1) fits squarely within exception (b)(2) of the Graves Amendment.
I believe that the plain language of exception (b)(2) allows Florida to continue to impose liability on lease car companies that fail to provide the insurance designated in section 324.02(9)(b)(1). If I were to engage in statutory interpretation of the Graves Amendment, the case law encourages a narrow reading of federal preemptive statutes in fields traditionally occupied by the states. See, e.g., Medtronic, Inc. v. Lohr, 518 U.S. 470, 484-86, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Courts are encouraged to seek out the purpose of such a statute. Id. at 485-86, 116 S.Ct. 2240. I would assume that Congress intends express exceptions to preemptive statutes to be fully enforced. The clear purpose of the Graves Amendment is to prevent a multitude of different liability rules among the states for lease and rental car companies that operate throughout the country while allowing the states to impose liability on lease car companies that do not provide the insurance designated by state law. It seems to me that section 324.021(9)(b)(1), in conjunction with Florida's dangerous instrumentality doctrine, accomplishes precisely that purpose in Florida, and I see no basis to rule that Congress has preempted this sound state law.
NOTES
[1] Although not relevant for purposes of this decision, the lease was initially executed by Tysinger Motor Co., Inc., in Hampton, Virginia, and later assigned to DaimlerChrysler.
[2] Under Florida's "significant relationships" test, we apply the tort law of the state that has the most significant relationships to the cause of action, which in this case is Florida. See Bishop v. Fla. Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980).
[3] United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).
[4] This issue too has been considered in other cases. See, e.g., Merchants Ins. Group v. Mitsubishi Motor Credit Ass'n, No. CV-03-6017, 2008 WL 203195 (E.D.N.Y. Jan. 23, 2008); see generally Beth Bates Holliday, Annotation, Validity, Construction, and Application of Graves Amendment (49 U.S.C.A. § 30106) Governing Rented or Leased Motor Vehicle Safety and Responsibility, 29 A.L.R. Fed.2d 223, § 11 (2008) (collecting cases).
[5] In this case, for example, the LaMondue Law Firm is not protected by section 324.021(9)(b) and as lessee and bailee of the car presumably remains liable under the dangerous instrumentality doctrine.