GROSS, C.J.
 

 DaimlerChrysler Insurance Company, as subrogee of DCFS Trust, appeals the dismissal with prejudice of its complaint against the appellees. The appellees, the defendants below, are Lincoln General Insurance Company, Access General Agency of Florida, and Mr. Auto Insurance of South Lake, which were, respectively, the insurer, the insurance broker, and the insurance agent for the lessee of a vehicle. The complaint arose from an accident involving a vehicle owned by DCFS and leased to the lessee, for which accident Daimler paid a $1 million settlement.
 

 Although we agree with Daimler that it could properly have maintained an equitable subrogation claim, we nonetheless affirm; the negligence cause of action Daimler sought to pursue against appellees failed as a matter of law because, in providing insurance to the lessee, appellees owed no legal duty to Daimler.
 

 Facts
 

 The allegations in Daimler’s second amended complaint paint the following picture of a long-term motor vehicle lease transaction. Daimler was the vicarious liability insurance carrier for DCFS, which was in the business of leasing cars. In 2002, Arrigo Enterprises, Inc., entered into a long-term lease with a lessee/driver who did not maintain the level of liability insurance required by the lease agreement. Instead of coverage limits of $100, 000/$300,000/$50,000, the driver obtained $10,000/$20,000/$10,000 insurance. The driver informed appellees that the vehicle was leased and that DCFS was the lessor. DCFS accepted Arrigo’s assurance that the proper insurance coverage was in place when it accepted assignment of the lease from Arrigo.
 

 In 2004, the leased vehicle was involved in an accident that resulted in the death of a passenger in the other vehicle. ' Congress then passed the Graves Amendment which, for any case filed after August 10, 2005, provided that a long term lessor of a vehicle may not be held vicariously liable for a lessee’s negligence, unless there is negligence on the part of the lessor.
 
 [1]
 
 Nonetheless, Daimler and DCFS concluded that, pursuant to subsection 324.021(9)(b), Florida Statutes, the fact that the driver did not have the proper insurance made DCFS the “owner” of the
 
 *71
 
 vehicle with unlimited vicarious liability-under Florida’s dangerous instrumentality doctrine. As a result, they believed that DCFS’s “contingent auto coverage” was triggered and that Daimler was compelled to pay the estate of the accident victim $1 million to settle the “underlying injury/death claim” against DCFS. They made that payment in June 2006.
 

 Noting that it was subrogated to the rights of its insured, DCFS, by virtue of its insurance policy and by common law equitable subrogation principles, Daimler then filed this action against the driver/lessee, Arrigo, and appellees.
 
 [2]
 
 Against ap-pellees, Daimler asserted claims for negligence. Daimler alleged that the driver had informed appellees that the vehicle was leased, that DCFS was the lessor, and that appellees knew or should have known Florida law regarding the liability limits for lease agreements. Daimler asserted that underwriting standards require an insurer to know the identity of the owner of a vehicle and that the appellees owed a duty to vehicle lessors and to the general public to abide by standard insurance practices to issue auto liability insurance coverage on leased vehicles as required by Florida vehicle leases and Florida statutes. By breaching this duty, appellees assisted the driver in breaching his lease.
 

 Daimler informed the circuit court that the Florida Supreme Court had stayed review of
 
 Rosado v. DaimlerChrysler Financial Services Trust,
 
 1 So.3d 1200 (Fla. 2d DCA 2009); in that case the second district held that the Graves Amendment preempts subsection 324.021(9)(b)(l), Florida Statutes (2002), regarding long-term automobile leases. Thus, application of the Graves Amendment would mean that lessor DCFS would not be liable for the underlying accident unless it was negligent or somehow guilty of criminal wrongdoing.
 
 Rosado
 
 was stayed pending the the Supreme Court’s review of this court’s decision
 
 Vargas v. Enterprise Leasing Co.,
 
 993 So.2d 614, 616 (Fla. 4th DCA 2008).
 
 [3]
 

 The trial court granted appellees’ motion to dismiss, ruling, among other things, that the Graves Amendment applied and preempted subsection 324.021(9)(b)(l), so that DCFS was not vicariously liable for the accident. Because Daimler had not pleaded any facts showing that preemption did not apply, the trial court ruled that it could not bring a subrogation claim against appellees.
 

 Analysis
 

 The preemptive effect of the Graves Amendment did not preclude Daimler from using equitable subrogation to assert a claim against appellees. After the following discussion on equitable subrogation, we explain why we nonetheless affirm.
 

 As Justice Anstead explained in his opinion concurring in part and dissenting in part in
 
 Continental Casualty Co. v. Ryan Inc. Eastern:
 

 “Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right.”
 
 Dade County Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 646 (Fla.1999) (quoting
 
 W. Am. Ins. Co. v. Yellow Cab Co.,
 
 495 So.2d 204, 206 (Fla. 5th DCA 1986)). Equitable subrogation, also referred to as legal subrogation, “is not created by a contract, but by the legal
 
 *72
 
 consequences of the acts and relationships of the parties.”
 
 Dade County,
 
 731 So.2d at 646. In general, equitable sub-rogation is appropriate where:
 

 (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subro-gation would not work any injustice to the rights of a third party.
 

 Id.
 
 (citing
 
 Fowler v. Lee,
 
 106 Fla. 712, 143 So. 613, 614 (1932)). The party who has discharged the debt “stands in the shoes” of the party whose claim has been discharged and therefore is entitled to the “right and priorities of the original creditor.”
 
 Id.
 

 974 So.2d 368, 380 (Fla.2008) (Anstead, J., concurring in part and dissenting in part).
 

 Daimler met all five requirements for equitable subrogation. It is undisputed that Daimler was not primarily liable, that there was no injustice to a third party, and that Daimler paid off the entire claim by acquiring a settlement with the accident victim. Daimler did not act as a volunteer and acted to protect its own interest, because at the time of the settlement the impact of the Graves Amendment had not been established by any court and settlement was a reasonable attempt to limit its liability.
 

 When Daimler made payment to settle the case in June 2006, the law surrounding the Graves Amendment was unsettled; at that point, no Florida district court of appeal had considered the impact of the federal statute. Subsection 30106(b)(2) of the Graves Amendment contains a savings clause providing that the statute does
 
 not
 
 supersede the law of any state “imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under state law.” Not until 2008 did this court determine that, for short-term vehicle leases, subsection 324.021(9)(b)2., Florida Statutes (2007), was not a “financial responsibility or liability insurance requirement” within the meaning of the section 30106(b)(2).
 
 See Vargas,
 
 993 So.2d at 618,
 
 approved by
 
 2011 WL 1496474. The first case to hold that the Graves Amendment preempts subsection 324.021(9)(b)l., dealing with a long term motor vehicle lease, was
 
 Rosado v. DaimlerChrysler Financial Services Trust,
 
 1 So.3d 1200 (Fla. 2d DCA 2009).
 

 Like state law regarding the impact of the Graves Amendment, federal law was also unsettled in 2006. In
 
 Garcia v. Vanguard Car Rental USA, Inc.,
 
 540 F.3d 1242 (11th Cir.2008), the eleventh circuit held the Graves Amendment to be constitutional. Prior to that, the district courts in Florida were split, with two cases holding the Graves Amendment to be outside the scope of the congressional commerce power.
 
 See Vanguard Car Rental USA, Inc. v. Huchon,
 
 532 F.Supp.2d 1371 (S.D.Fla.2007);
 
 Vanguard Car Rental USA, Inc. v. Drouin,
 
 521 F.Supp.2d 1343 (S.D.Fla.2007),
 
 rev’d.,
 
 21 Fla. L. Weekly Fed. C 1719, 2009 WL 995141 (11th Cir. 2009) (unpublished per curiam decision).
 

 If there is a reasonable doubt concerning liability at the time of a settlement, the settling party is not later precluded from pursuing equitable subro-gation. As the third district explained in
 
 Kala Investments, Inc. v. Sklar:
 

 One should have the right to settle a lawsuit in which there is a reasonable doubt concerning liability and not be required to incur all of the expenses of litigation to conclusion before being entitled to seek subrogation. To hold otherwise would be to discourage settlements
 
 *73
 
 and to promote litigation, a concept which should be discouraged by the courts. We believe it is not inappropriate to hold that one who is sued for alleged negligence and who, in an effort to save his property, including the expenditure of attorney’s fees, enters into a reasonable settlement is not a volunteer and is entitled to seek reimbursement under the doctrine of equitable subrogation.
 

 588 So.2d 909, 918 (Fla. 3d DCA 1989) (quoting
 
 Rawson v. City of Omaha,
 
 212 Neb. 159, 322 N.W.2d 381, 385 (1982));
 
 see also Suntrust Bank v. Riverside Nat’l Bank,
 
 792 So.2d 1222, 1225 (Fla. 4th DCA 2001) (holding that, under the doctrine of equitable subrogation, “equity will grant relief where a mortgage is satisfied by mistake and no rights of third parties have intervened” if the mistaken action was reasonable).
 

 To argue that it should not be barred from equitable subrogation because of its failure to properly evaluate the preemptive impact of the Graves Amendment, Daimler cites cases that involve mistakes of fact—
 
 West American Insurance Co. v. Yellow Cab Co. of Orlando, Inc.,
 
 495 So.2d 204 (Fla. 5th DCA 1986), and
 
 Transport International Pool, Inc. v. Pat Salmon & Sons of Fla., Inc.,
 
 609 So.2d 658 (Fla. 4th DCA 1992). In both cases defendants settled, only to later find out that they did not have any liability based on the facts of the case. Given the Supreme Court’s commitment “to a liberal application of the rule of equitable subrogation,” we see no reason to treat reasonable mistakes of law differently than reasonable mistakes of fact.
 
 [4]
 

 Dantzler Lumber & Export Co. v. Columbia Cas. Co.,
 
 115 Fla. 541, 156 So. 116, 120 (1934).
 

 We affirm the dismissal with prejudice, however, for another reason. Even if Daimler might stand in the shoes of DCFS and pursue a lawful claim by way of equitable subrogation, it could not base a cause of action for negligence against appellees because appellees did not owe a legal duty to DCFS that would support such an action.
 

 One of the elements of a negligence cause of action is a “duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.”
 
 Clay Elec. Coop., Inc. v. Johnson,
 
 873 So.2d 1182, 1185 (Fla.2003) (quoting
 
 Prosser and Keeton on the Law of Torts
 
 164-65 (W. Page Keeton ed., 5th ed. 1984)) (emphasis in
 
 Clay Elec.).
 
 Whether a legal duty exists in a negligence action is a question of law for the court.
 
 Biglen v. Fla. Power & Light Co.,
 
 910 So.2d 405, 408 (Fla. 4th DCA 2005).
 

 The Supreme Court has held that a legal duty may arise from four general sources:
 

 (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of a case.
 
 Clay Elec.,
 
 873 So.2d at 1185 (citing
 
 McCain v. Fla. Power Corp.,
 
 593 So.2d 500, 503 n. 2 (Fla.1992)). The fourth category encompasses “that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant.”
 
 McCain,
 
 593 So.2d at 503 n. 2.
 

 
 *74
 

 Curd v. Mosaic Fertilizer, LLC,
 
 39 So.3d 1216, 1227-28 (Fla.2010).
 

 We explained the concept of foreseeability in
 
 Biglen:
 

 The supreme court has made foreseeability the polestar to finding both the existence of a legal duty and its scope; “whenever a human endeavor creates a generalized and foreseeable risk of harming others,” which the court describes as a “foreseeable zone of risk,” the law generally places a duty upon a defendant “ ‘either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.’ ”
 
 McCain
 
 ..., 593 So.2d [at] 503[ ] (quoting
 
 Kaisner v. Kolb,
 
 543 So.2d 732, 735 (Fla.1989)). The existence of a legal duty means that a defendant stands in a “ ‘relation to the plaintiff as to create [a] legally recognized obligation of conduct for the plaintiffs benefit.’ ”
 
 Palm Beach-Broward Med. Imaging Ctr., Inc. v. Cont’l Grain Co.,
 
 715 So.2d 343, 344 (Fla. 4th DCA 1998) (quoting
 
 Prosser and Keeton
 
 § 42, at 274). The absence of a foreseeable zone of risk means that the law imposes no legal duty on a defendant, and therefore defeats a negligence claim.
 

 910 So.2d at 408. In
 
 Palm Beach-Bro-ward Medical Imaging Center,
 
 we described the application of the foreseeable zone of risk test:
 

 In applying the “foreseeable zone of risk” test to determine the existence of a legal duty, the supreme court has focused on the likelihood that a defendant’s conduct will result in the type of injury suffered by the plaintiff. This aspect of foreseeability requires a court to evaluate
 

 whether the
 
 type
 
 of negligent act involved in a particular case has so frequently previously resulted in the
 
 same type
 
 of injury or harm that ‘in the field of human experience’ the same
 
 type
 
 of result may be expected again.
 

 Pinherton-Hays Lumber Co. v. Pope,
 
 127 So.2d 441, 443 (Fla.1961).
 

 715 So.2d at 345 (emphasis in Pope).
 

 In this case, no legislative enactment or administrative regulation imposed a duty running from appellees to the lessor DCFS to see that the lessee acquired a certain level of insurance. The insurance levels discussed in subsection 324.021(9)(b)l. are not mandatory; if a lease “requires the lessee” to obtain insurance with “not less than” $100,000/$300, 000/$50,000 in coverage, and “insurance meeting these requirements is in effect,” then the lessor avoids the operation of the dangerous instrumentality doctrine. § 324.021(9)(b)l. Nothing in the statute requires a party to a long-term motor vehicle lease to obtain a specified level of insurance. The lessor may obtain insurance to satisfy the statute so long as “the combined coverage for bodily injury liability and property damage liability shall contain limits of not less than $1 million.”
 
 Id.
 
 Nothing in Chapter 324 precludes a long-term motor vehicle lessee from obtaining only the minimum coverage required for financial responsibility under section 324.022. Chapter 324 leaves lessors and lessees free to negotiate the level of insurance that will be required under the lease. Appellants have pointed to no statute or administrative rule that requires an insurer, insurance broker, or agent to make sure that a lessee is not in breach of his lease with a motor vehicle lessor.
 

 Similarly, we do not find that appellees’ conduct created a foreseeable zone of risk running to DCFS. Appellees’ status as the lessee’s insurer and its agents did not impose upon them a legally recognized obligation of conduct for the benefit of the lessor. Between the issuance of the policy
 
 *75
 
 to the lessee and Arrigo’s assignment of the lease to DCFS were four missteps by the parties to the lease and assignment, any one of which might have led DCFS to avoid the loss for which Daimler now seeks recovery. First, the lessee breached his lease with Arrigo by failing to secure the level of insurance required in the lease. Second, Arrigo failed to verify that the lessee had in fact complied with the lease requirements. Third, Arrigo potentially breached its agreement with DCFS by assigning a lease that placed the assignee at risk. Fourth, DCFS failed to verify that Arrigo was assigning it a lease where the parties had complied with subsection 324.021(9)(b)l.
 

 With four such missteps standing between defendants and an injury to the lessors, there was no foreseeable zone of risk requiring appellees to protect the lessor from the type of injury that occurred here. The law does not require appellees to bear the risk of multiple breaches of contract; as a general rule, where the parties to a contract fail to take even minimal steps for their own protection they should not, under tort law, be able to shift the loss to a party that is a stranger to that contract.
 
 [5]
 
 Although principles of subrogation would allow Daimler to stand in the shoes of DCFS to assert a
 
 lawful
 
 claim of DCFS against appellees, common law negligence will not lie.
 

 Affirmed.
 

 POLEN and DAMOORGIAN, JJ., concur.
 

 [1]
 

 .
 
 See
 
 Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users § 10208(a), Pub. L. No. 109-59, 119 Stat. 1144 (codified at 49 U.S.C. § 30106 (2006) (effective Aug. 10, 2005)).
 

 [2]
 

 . The claims against the driver/lessee were for common law and contractual indemnity and breach of contract. The claims against the dealership were for negligent misrepresentation and breaches of the dealership agreement and assignment contract.
 

 [3]
 

 . The Supreme Court approved this court’s
 
 Vargas
 
 decision in
 
 Vargas v. Enterprise Leasing Co.,
 
 60 So.3d 1037 (Fla. Apr.21, 2011).
 

 [4]
 

 . Appellees rely on a number of indemnity cases which are not relevant, because they interpret contractual indemnification clauses rather than apply the rules of equitable subro-gation.
 
 See, e.g., Metro. Dade Cnty. v. Fla. Aviation Fueling Co.,
 
 578 So.2d 296 (Fla. 3d DCA 1991).
 

 [5]
 

 . We distinguish this case from the title insurance cases, where a negligent abstractor knows or should know that third persons not in privity with the abstractor will be relying on the abstract.
 
 See First Am. Title Ins. Co. v. First Title Serv. Co. of Fla. Keys,
 
 457 So.2d 467 (Fla.1984);
 
 Safeco Title Ins. Co. v. Attorneys’ Title Servs., Inc.,
 
 460 So.2d 518 (Fla. 3d DCA 1984).