ALTENBERND, Judge.
 

 Eric M. Shelden appeals an order denying his motion seeking a modification of the alimony that he pays to his former wife, Kim Mutschler. There are several irregularities in this proceeding that require that the order on appeal be reversed and remanded for further proceedings.
 

 Mr. Shelden and Ms. Mutschler obtained a final judgment of dissolution of marriage in December 1996. We assume that they obtained a divorce using a form petition comparable to Florida Family Law Rules of Procedure Form 12.901(a) and that the petition attached a marital settlement agreement. We are obliged to make this assumption because it appears that the
 
 *80
 
 clerk of the circuit court in Pinellas County may have lost this court file. Our record begins with a photocopy of the recorded final judgment. That judgment references a “private mediation agreement” that the parties entered into on October 23, 1996, which apparently was attached to the petition for dissolution but not attached to the final judgment. The record contained no copy of the private mediation agreement when the trial court entered the order on appeal. There is a copy of a private mediation agreement attached to a motion for civil contempt filed on January 27, 2010, which is probably an accurate copy of the original agreement, but the trial court has made no decision that it is an accurate copy.
 

 The private mediation agreement in our record requires Mr. Shelden to pay permanent periodic alimony in the amount of $500 per month and contains no indication that this amount cannot be modified. It requires that he secure the alimony obligation with a life insurance policy in the amount of $60,000.
 

 In October 2008, Mr. Shelden filed a pro se motion for modification of alimony. In the motion he explained that there had been a substantial change in circumstances in that he lost his job in the economic downturn and had been unemployed for six months. He also claimed that Ms. Mutschler, although not remarried, had been in a permanent supportive relationship with another man for several years. He sought a reduction in alimony and an elimination of the life insurance requirement. Ms. Mutschler filed a pro se response to this motion. When the matter was not resolved in mediation, the trial court referred the case to a general magistrate.
 

 The general magistrate held a hearing in the case in October 2009. He was confronted with two pro se litigants and a “duplicate” court file that was out of order and missing many filings, including the critical mediation agreement. As is often the case, the pro se litigants tended to focus on issues that were important to them but not necessarily important to the general magistrate in making his decision. As a result, the hearing was not long enough to cover the essential issues, and it is probably fair to suggest that everyone left the hearing dissatisfied with the process. Mr. Shelden filed numerous documents in support of his motion and explained that he had found a new job, but it paid less than $500 per week.
 

 The general magistrate filed a report and recommendation that concluded that Mr. Shelden had failed to prove that Ms. Mutschler’s relationship with the other man was sufficient to warrant a modification in the alimony. However, the report did find that there had been a substantial change in circumstances as to Mr. Shel-den’s income. In 2009, he was making about half the income that he had made when the parties divorced in 1996. Meanwhile, Ms. Mutschler’s pay had increased from $7 per hour to $17 per hour. Acknowledging that the mediation agreement was not in the record, the magistrate concluded that the parties anticipated Ms. Mutschler’s increase in pay because Mr. Shelden had paid her rehabilitative alimony. Noting that Mr. Shelden was current on his alimony and was receiving financial support from another woman, the general magistrate concluded that Mr. Shelden’s substantial reduction in income was not, standing alone, a basis to reduce the alimony in this case because Mr. Shelden’s financial affidavit showed a monthly surplus of $15.97. The report and recommendation contains no resolution of the life insurance issue.
 

 Mr. Shelden filed extensive exceptions to the report. The trial court overruled
 
 *81
 
 the exceptions and entered an order in February 2010 confirming the report and recommendation. Oddly, the order contains language purporting to dissolve the marriage and indicating that this order is the final order of dissolution. Mr. Shelden appealed this order. Both parties obtained counsel to assist them in this appeal.
 

 As an initial matter, we conclude that the order must be reversed to remove the language that seemingly grants the parties a second divorce. Likewise, we conclude that the issue of the life insurance should be addressed on remand.
 

 Concerning the denial of the modification, Ms. Mutschler’s attorney on appeal argues that the general magistrate reached the correct result because the alimony set by the private mediation agreement was nonmodifiable. Not only did Ms. Mutschler fail to make this argument in the trial court, but we have no reliable copy of the private mediation agreement in the official record or in evidence.
 
 See N.L.E. v. Dep’t of Children & Family Servs.,
 
 970 So.2d 486, 489 (Fla. 2d DCA 2007) (stating that generally appellate courts will not consider a new issue on appeal);
 
 Sheldon v. Tiernan,
 
 147 So.2d 593, 593 (Fla. 2d DCA 1962) (“Appellate review is ... confined to the record on appeal.”). The copy attached to the January 2010 motion does not contain the type of express language required to obtain a waiver of the right to modify alimony.
 
 See Tapp v. Tapp,
 
 887 So.2d 442, 444 (Fla. 2d DCA 2004) (noting that parties to a marriage may waive the right to modify alimony only through clear and unambiguous language).
 

 Mr. Shelden argues that the trial court erred in confirming the report and recommendation and that he was denied due process at the hearing before the general magistrate. An appellate court generally reviews a trial court’s decision to deny such a modification under the abuse of discretion standard,
 
 Farley v. Farley,
 
 858 So.2d 1170, 1172 (Fla. 2d DCA 2003), and both the trial court and this court are bound by the general magistrate’s findings of fact unless they are not supported by competent, substantial evidence or are clearly erroneous,
 
 Carls v. Carls,
 
 890 So.2d 1135, 1138 (Fla. 2d DCA 2004).
 

 We are very hesitant to rule that a general magistrate violates due process in this type of hearing involving pro se litigants. Certainly, the general magistrate in this case was attempting to work with the two litigants to understand their claims and to resolve them within the ninety minutes allotted for the hearing. Neither party made any legal objections to the procedures used at the hearing. Accordingly, we reject Mr. Shelden’s claim that he was denied due process.
 

 However, we are persuaded by Mr. Shelden’s related claim that the trial court’s order is not supported by competent, substantial evidence. Not only was the court file missing, but the hearing was conducted exclusively by the general magistrate. He placed both litigants under oath and then proceeded to ask them questions as he saw fit. The general magistrate did not permit Mr. Shelden, who had the burden of proof on these issues, to call or examine any witnesses or to cross-examine any of his former wife’s answers to the general magistrate’s questions — albeit, Mr. Shelden never asked to do so. Much of the hearing consisted of a discussion of the innumerable documents that Mr. Shel-den had filed, some but not all of which were evidentiary in nature. Frankly, it is not entirely clear that any of the documents were ever placed into evidence, but the general magistrate seems to have assumed that they were all in evidence.
 

 
 *82
 
 The record clearly supports the general magistrate’s finding that Mr. Shelden’s income had suffered a permanent and substantial reduction and that Ms. Mut-schler’s had significantly increased. The record also supports his findings concerning the absence of a supportive relationship between Ms. Mutschler and the other man. However, the evidence in the record does not appear to support his finding that the parties anticipated Ms. Mutschler’s significant increase of income when they entered into the private mediation agreement because she received rehabilitative alimony. Assuming the copy of the private mediation agreement is accurate, it reflects rehabilitative alimony of $200 for only a few months with no explanation of the plan of rehabilitation. Moreover, the general magistrate relied exclusively on Mr. Shelden’s financial affidavit to conclude that he had a monthly surplus of $15.97 after paying the alimony, when the affidavit contained no expenses for housing, ear maintenance, clothing, grooming, entertainment, or gifts and estimated his medical and dental expense as $7.78 per month because he had no medical insurance. The assumption that Mr. Shelden could and should rely on his “girlfriend” for all of these expenses is simply not supported by competent, substantial evidence. After a review of the documents that the general magistrate received from Mr. Shelden, we conclude that the finding he had a surplus of $15.97 per month is clearly erroneous.
 

 We conclude that the trial court erred in accepting these findings of fact and that the errors affected the court’s discretionary decision to deny a modification. On remand, the trial court need not revisit the issue of the alleged supportive relationship, but it should reconsider whether there have been substantial permanent, unexpected changes in the financial circumstances of the parties that might warrant some change in Mr. Shelden’s alimony obligation.
 

 Reversed and remanded.
 

 DAVIS and KHOUZAM, JJ., Concur.