IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

COLUMBIA BANK,

     Appellant,

v.

HEATHER JOHNSON
TURBEVILLE, and ST. PAUL
MERCURY INSURANCE
COMPANY,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-2750

**CORRECTED PAGES: pg 1
CORRECTION IS UNDERLINED IN RED
MAILED: July 08, 2014
BY: THA**

Opinion filed July 7, 2014.

An appeal from the Circuit Court for Columbia County.
Julian E. Collins, Judge.

Rutledge R. Liles and Robert B. George of Liles, Gavin & George, P.A., Jacksonville, for Appellant.

Whitney K. McGuire and Michael E. Demont of Smith, Hulsey & Busey, Jacksonville, and Kevin M. Mekler of Mills Paskert Divers, P.A., Tampa, for Appellee.

MAKAR, J.

     Columbia Bank sued a former employee, Heather Johnson Turbeville, to

recover funds she withdrew from an account owned by her grandmother. Because

the trial court's dismissal of the Bank's claims against Ms. Turbeville was error, we reverse.

I.

We present the facts as alleged in the Bank's complaint. In August 2005, Ms. Jewel H. Pueschel and her son, James, opened five accounts totaling $1,220,432.30 with Columbia Bank. To help her grandmother and father manage these accounts, Ms. Turbeville, a branch manager, offered her assistance and was thereafter added as a joint account holder for this purpose. The funds were solely those deposited by Ms. Pueschel and her son; Ms. Turbeville never deposited any money of her own into the accounts.

When her son died about a year and a half later, Ms. Pueschel transferred the funds into five new accounts with the Bank, each listing her as a joint account holder with her granddaughter. A short time later, Ms. Pueschel executed a Durable Power of Attorney granting Ms. Turbeville certain rights, including the right to manage Ms. Pueschel's bank accounts. Ms. Pueschel also opened a sixth account into which she deposited $50,000; Ms. Turbeville was listed on this new account as well.

At some point, Ms. Pueschel, suspecting that her granddaughter had ulterior motives, decided to either transfer the funds or remove Ms. Turbeville from the accounts. Ms. Pueschel went to the bank and requested that her funds—then

2

totaling $1,320,286.50—be transferred to six new accounts in her name only. A bank employee told Ms. Pueschel that it would "not be a problem to transfer the funds into new accounts." But another bank employee, Tammy Clarke, intervened and said Ms. Pueschel could not close the accounts or transfer the funds into new accounts bearing only her name; she was also told that she had to present the account certificates, which she did not have with her at that time, and had to comply with other conditions before withdrawing the funds. Ms. Pueschel became upset, so Ms. Clarke said that the Bank would "freeze the accounts so that no money could be removed from said accounts until such time as the issue concerning [Ms. Turbeville]'s status as a joint account holder was resolved."

Ms. Clarke then called Ms. Turbeville to inform her of Ms. Pueschel's intentions to transfer the funds; she knew Ms. Turbeville from working at the Bank and also knew of the relationship between her and her grandmother. That day or the next, Ms. Turbeville went to her branch office and instructed a teller to withdraw $671,696.57 from the accounts and draft a cashier's check payable to her name only. Ms. Turbeville then deposited the funds into her own personal account, a transaction that prompted Ms. Pueschel to revoke the Durable Power of Attorney and seek recovery of the funds.

To get her monies back, Ms. Pueschel sued the Bank alleging that it wrongfully allowed Ms. Turbeville to withdraw the funds. That case settled, the

3

Bank paying $1.1 million to Ms. Pueschel to resolve all of her claims and receiving an assignment of Ms. Pueschel's claims against Ms. Turbeville. The Bank then sued Ms. Turbeville and its insurer, St. Paul Mercury Insurance Company.[1] It amended its complaint twice, seeking a declaration of rights and asserting a breach of contract against its insurer and suing Ms. Turbeville on three theories: equitable subrogation, conversion, and breach of fiduciary duty. Ms. Turbeville moved to dismiss the three claims against her with prejudice. After a hearing on the motion, the trial court dismissed the Bank's claims against Ms. Turbeville with prejudice and this appeal ensued.

II.

On appeal, the Bank argues that dismissal with prejudice was erroneous because it adequately and properly alleged the required elements for each of its three claims, which we address in turn.

*A. The Equitable Subrogation Claim*

Two types of subrogation exist in Florida: conventional and equitable. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999). Conventional subrogation, which arises from a contract between parties, is inapplicable here because no contract in subrogation exists between the Bank and

---

[1] St. Paul is also an appellee, but this appeal only pertains to Ms. Turbeville's motion to dismiss.

Ms. Turbeville. Equitable subrogation, which the Bank asserts against Ms. Turbeville, is an equitable remedy rooted in the legal consequence of the actions and relationship between the parties. Id.; see also Aurora Loan Servs. LLC v. Senchuk, 36 So. 3d 716, 718 (Fla. 1st DCA 2010). The "policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge." Kala Inv., Inc. v. Sklar, 538 So. 2d 909, 917 (Fla. 3d DCA 1989). The doctrine places "one party into the shoes of another so that the substituting party retains the rights, remedies, or securities that would otherwise belong to the original party." Aurora Loan Servs., 36 So. 3d at 722.

Use of this equitable remedy is appropriate when the subrogee (here, the Bank):

(1)  made the payment to protect its own interest,
(2)  did not act as a volunteer,
(3)  was not primarily liable for the debt,
(4)  paid off the entire debt, and
(5)  works no injustice to the rights of a third party by its equitable subrogation claim.

Dade Cnty. Sch. Bd., 731 So. 2d at 646. Tracking these elements, the Bank's second amended complaint alleges that it made the payment to Ms. Pueschel to protect its interests and to "discharge[] the debt owed to and compensated" for the "wrongful actions taken by Ms. Turbeville." The Bank further alleged it "did not act as a volunteer in making such payment to Ms. Pueschel" and that it "was not

5

primarily responsible" for the entire amount paid; instead, "Ms. Turbeville was primarily responsible because she wrongfully removed the funds from Ms. Pueschel's accounts." Finally, it alleged that subrogation "will not work any injustice to the rights of any party."

To supplement these allegations, which could be characterized as conclusory, the Bank initially pled facts underlying its settlement with Ms. Pueschel, whose complaint against the Bank was an attachment. The Bank did not attach her complaint to the second amended complaint at issue, but recited the factual allegations supporting the elements of its equitable subrogation claim including the Bank's reasons for entering a settlement agreement with Ms. Pueschel, which resolved all of her claims and the entire amount sought.

Ms. Turbeville asserts that the voluntariness element has not been adequately asserted, but the Bank essentially claims it settled "[i]n the face of the lawsuit in which it was named as a defendant . . . to protect its own interests." West American Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So. 2d 204, 207 (Fla. 5th DCA 1986). Such an allegation is enough to plead the involuntariness element. Ms. Turbeville also claims the Bank is primarily liable, the Bank countering that it was her conduct outside the scope of employment that primarily caused liability to Ms. Pueschel. This factual dispute, rather than a basis for dismissal of the equitable subrogation claim, falls into the category for decision by a jury. See Dade Cnty.

6

Sch. Bd., 731 So. 2d at 646; see also West American, 495 So. 2d at 205. The same is true of Ms. Turbeville's claim the Bank did not obtain a proper release from claims from Ms. Pueschel. Finally, Ms. Turbeville asserts that the Bank had no interest to protect because it was immune from liability pursuant to section 655.78, Florida Statutes, which shields banks from liability for dispersing funds to joint account holders. While the intent of this statute "is to protect a financial institution from liability for distributing funds from a multiple-party account to any of the individual account holders[,]" it "does not in any manner shape the relationship between the account holders themselves." Sandler v. Jaffe, 913 So. 2d 1205, 1207 (Fla. 4th DCA 2005) (noting that although a daughter, who was on a joint account with her mother, "was authorized to withdraw the funds, she was not authorized to use the funds for her personal benefit."). Under the factual circumstances pleaded, the statute does not facially bar an equitable subrogation claim. Because the Bank has pleaded the elements of equitable subrogation, and supported its claim with factual allegations, it was error to dismiss this claim with prejudice.

## B. The Conversion Claim

The Bank's conversion claim focuses on the ownership of the funds at issue, and that Ms. Turbeville's withdrawal was inconsistent with her authority as given by her grandmother. Its complaint alleges "Ms. Turbeville intentionally engaged in

7

unauthorized conduct when she (a) withdrew funds from the accounts at issue" depriving Ms. Pueschel of her "immediate right to possess the funds" and (b) failed to return the funds upon demand. The Bank's damages would be those recoverable by Ms. Pueschel as assigned to the Bank.

The Bank's conversion claim is legally sufficient under the facts pleaded. A conversion claim is based on a "positive, overt act or acts of dominion or authority over the money or property inconsistent with and adverse to the rights of the true owner." S. S. Jacobs Co. v. Weyrick, 164 So. 2d 246, 250 (Fla. 1st DCA 1964) (internal quotation marks omitted). At this stage of the pleadings, the Bank was not required to go beyond a "short and plain statement of ultimate facts" under Rule 1.110(b), Florida Rules of Civil Procedure. The Bank's allegations are sufficient to demonstrate that Ms. Pueschel owned all of the funds, intending that Ms. Turbeville have access to the funds only for Ms. Pueschel's benefit, such that the withdrawal of the funds at issue was an unauthorized act. Ms. Turbeville argues that insufficient facts were alleged to support that she failed to return the funds after a demand was made for their return. But it was unnecessary for the Bank to make this averment because the:

> purpose of proving a demand for property by a plaintiff and a refusal by a defendant to return it in an action for conversion is to show the conversion. The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made.

Mayo v. Allen, 973 So. 2d 1257, 1259 (Fla. 1st DCA 2008) (quoting Goodrich v. Malowney, 157 So. 2d 829, 832 (Fla. 2d DCA 1963)). Given facts alleged establishing conversion had occurred, the Bank was not required to demonstrate demand and refusal. Because the Bank has pleaded the elements of a conversion claim, it was error to dismiss this claim with prejudice.

*C. The Breach of Fiduciary Duty Claim*

The Bank's breach of fiduciary relationship claim is straightforward, as stated in its second amended complaint. The Bank claimed that Ms. Turbeville "held a position of trust and confidence with respect to Ms. Pueschel" that included a fiduciary duty to not withdraw or transfer funds wrongfully resulting in damages. Again, the Bank asserts this claim as one arising from the settlement with Ms. Pueschel. These allegations meet the basic elements of a cause of action for breach of fiduciary duty: (1) existence of a fiduciary duty, (2) breach of that duty, and (3) damages flowing from the breach. Cassedy v. Alland Inv. Corp., 128 So. 3d 976, 978 (Fla. 1st DCA 2014). As framed by the second amended complaint, both direct and implied fiduciary duties are in play due to Ms. Turbeville's role as a manager at the Bank as well as her familial position of granddaughter.

Ms. Turbeville argues that the breach of fiduciary duty claim cannot be assigned because the services provided to Ms. Pueschel were "personal services," citing Wachovia Insurance Services v. Toomey, 994 So. 2d 980 (Fla. 2008). The

9

Florida Supreme Court in <u>Toomey</u> confronted how to determine whether a breach of fiduciary duty claim is assignable: is a fiduciary duty so "intensely" personal that its breach is non-assignable or does the nature of relationship govern assignability? <u>Id.</u> at 987. The Court concluded that "both the duty and the relationship must be examined to determine whether the cause of action is assignable." <u>Id.</u> At this stage of the pleadings, the Bank has alleged a sufficient relationship between the parties and a fiduciary duty to conclude that Ms. Pueschel's assignment of her claim to the Bank is legally permissible. The contractual relationship between Ms. Pueschel and Ms. Turbeville—even if between grandmother and granddaughter—was first and foremost that of a bank employee with a fiduciary responsibility to ensure the safekeeping of Ms. Pueschel's monies.

## III.

The Bank sufficiently alleged the required elements and basic facts for each of its claims, making it error to dismiss them with prejudice. We therefore reverse and remand.

REVERSED.

LEWIS, C.J. and WOLF, J., CONCUR.

10