[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15799

_____

D.C. Docket No.: 0:12-cv-60824-KMW

NOVA CASUALTY CO.

Plaintiff-Appellant,

versus

ONEBEACON AMERICA INSURANCE CO.

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 17, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and WALTER,[*] District Judge.

WALTER, District Judge:

Plaintiff-Appellant Nova Casualty Co. ("Nova") appeals the district court's grant of summary judgment in favor of Defendant-Appellee OneBeacon America Insurance Co. ("OneBeacon"). In the underlying insurance dispute, OneBeacon served as the primary insurer, while Nova was the excess insurer.  This declaratory judgment action arises from OneBeacon's refusal to defend and indemnify its insured, forcing the excess carrier Nova to step in to defend and settle a state court lawsuit against the insured.  Nova instituted this suit, seeking a declaration that OneBeacon was obligated to defend and indemnify the insured and that its failure to do so resulted in a breach of contract.  The district court agreed with Nova but nonetheless held that Nova was not entitled to damages.  Nova now appeals that ruling.  Following a review of the record and with the benefit of oral argument, we REVERSE AND REMAND.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Facts.

The facts of this case are undisputed.  Silverhunt Associates, Ltd.

---

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

("Silverhunt") leased Florida property to New York Community Bancorp, Inc. ("NYCB"). NYCB operated a bank on the leased property. The lease required NYCB to maintain liability insurance of at least $1 million per occurrence on the premises and to list Silverhunt as an additional insured ("AI") under NYCB's insurance policy. The lease also contained an indemnification provision in which NYCB agreed to defend and hold Silverhunt harmless against personal injury claims arising from occurrences on the leased premises. OneBeacon issued an insurance policy to NYCB, providing $1 million per occurrence primary limits and $20 million excess limits. Silverhunt was listed as an AI in the OneBeacon policy, which was executed, issued, and delivered in New York. Separately, Nova insured Silverhunt under a general liability policy, providing $1 million per occurrence primary limits and $4 million excess limits.

Tragically, an armed robbery at the bank left a bank patron, Michael McQuade ("McQuade"), paralyzed after being shot. McQuade sued Silverhunt and NYCB in Florida state court. Nova stepped in to defend Silverhunt against McQuade's suit and requested that OneBeacon defend and indemnify Silverhunt pursuant to the AI clause of the NYCB liability policy. OneBeacon declined, based upon its belief that under the circumstances of the case and the terms of the contract, it was not required to defend Silverhunt. Nova subsequently requested that OneBeacon participate in the settlement of McQuade's claim against

3

Silverhunt, but again, OneBeacon refused.

While OneBeacon's $1 million primary limits were still available, Nova settled McQuade's action against Silverhunt for $1.5 million. OneBeacon did not participate in or contribute to the settlement. After Nova settled McQuade's claim against Silverhunt, OneBeacon settled McQuade's action against NYCB for an undisclosed amount, which was in excess of its primary limits. Accordingly, the primary limits of the OneBeacon policy are now exhausted.

## B.    Relevant Procedural History.

Nova filed suit in district court, seeking a declaratory judgment that OneBeacon had a duty to defend and indemnify Silverhunt. Nova also claimed a right to equitable subrogation, based on its settlement with McQuade. OneBeacon filed a counterclaim seeking a declaratory judgment that it had no duty to defend or indemnify Silverhunt in the McQuade litigation.

Following cross-motions for summary judgment, the district court, applying New York law, held that OneBeacon, as the primary insurer, breached its duty to defend and indemnify Silverhunt in the McQuade litigation. However, the court also concluded that, with OneBeacon's $1 million policy exhausted on behalf of NYCB, Nova was not entitled to damages in the absence of proof of bad faith. Nova filed the instant appeal. OneBeacon did not cross-appeal any of the issues decided adversely to its position.

4

## II.    STANDARD OF REVIEW

We review <u>de novo</u> the district court's determination of summary judgment. <u>See</u> <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u> 540 F.3d 1270, 1274 (11th Cir. 2008).  The interpretation of provisions in an insurance policy is a question of law, which is reviewed <u>de novo</u>.  <u>See</u> <u>id.</u>

## III.    DISCUSSION

### A.    Choice of Law.

The first question is whether Florida or New York law should apply in determining the remedies available for a breach of contract action.  In a diversity action, we apply the substantive law of the forum state, Florida, including its conflict of laws rules.  <u>See</u> <u>Fioretti v. Mass. Gen. Life Ins. Co.</u>, 53 F.3d 1228, 1235 (11th Cir. 1995).  The Florida Supreme Court has adopted the doctrine of *lex loci contractus* for conflict of laws questions in contracts.  <u>See</u> <u>id.</u>; <u>State Farm Mut. Auto. Ins. Co. v. Roach</u>, 945 So. 2d 1160, 1163 (Fla. 2006).  "The doctrine of *lex loci contractus* directs that, in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made . . . ."  <u>Fioretti</u>, 53 F.3d at 1235.  However, issues regarding the manner and means of performance of the contract are determined by the law of the place of performance.  <u>See</u> <u>Gov't Emp. Ins. Co. v. Grounds</u>, 332 So. 2d 13, 14-15 (Fla. 1976).  Here, the district

5

court properly applied New York law to all contract interpretation issues, finding, as previously discussed, that OneBeacon owed Silverhunt a duty to defend and indemnify it and also that, by failing to act, OneBeacon breached the duty it owed to Silverhunt.

We must next ascertain the nature of Nova's action against OneBeacon in order to determine which state's law governs the remedies available to Nova in light of the breach. Nova's action against OneBeacon is based on OneBeacon's performance, or lack thereof, under the contract. Under the conflict of laws analysis, this is an issue involving the manner and means of performance. Here, factors relating to the performance of the contract, including the location of the property, the tort, and the jurisdiction in which the McQuade suit was brought and not defended, are all grounded in Florida. See Grounds, 332 So. 2d at 14-15; Adams v. Fid. & Cas. Co. of N.Y., 920 F.2d 897, 899 n.5 (11th Cir. 1991) (noting that in a bad faith failure to settle cause of action, Florida law applied to questions regarding the insurer's performance under the contract and the remedies available for non-performance). Accordingly, Florida law governs Nova's entitlement to and the extent of relief available under its equitable subrogation theory. The district court erred in applying New York law.

**B.    Equitable Subrogation**.

Equitable subrogation "is an equitable remedy rooted in the legal

6

consequence of the actions and relationship between the parties." Columbia Bank v. Turbeville, 143 So. 3d 964, 968 (Fla. 1st Dist. Ct. App. 2014). The rationale underlying the doctrine of equitable subrogation is "to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge." Id. "The doctrine places one party into the shoes of another so that the substituting party retains the rights, remedies, or securities that would otherwise belong to the original party." Id. (internal marks omitted). In the insurance context, equitable subrogation ensures that the "primary insurer is held responsible to the excess insurer for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved." Perera v. U.S. Fid. and Guar. Co., 35 So. 3d 893, 900 (Fla. 2010) (internal marks omitted).

The issue before us is, under a theory of equitable subrogation, what, if anything, can Nova recover from OneBeacon when OneBeacon exhausted its policy limits for another insured after refusing to defend and settle on Silverhunt's behalf. Asked another way, if OneBeacon breached its duty to defend and indemnify before settling McQuade's suit against NYCB, can its settlement for the limits of its policy absolve it of any responsibility to Silverhunt? Our answer is no.

All insurers are expected to perform in good faith when handling claims against their insureds. As the Florida Supreme Court has articulated, "when an

7

insurer is handling claims against its insured, it has a duty to use the same degree

of care and diligence as a person of ordinary care and prudence should exercise in

the management of his own business." Id. at 898 (internal marks omitted).  An

insurer's

> good faith duty obligates the insurer to advise the insured of
> settlement opportunities, to advise as to the probable outcome of the
> litigation, to warn of the possibility of an excess judgment, and to
> advise the insured of any steps he might take to avoid same. The
> insurer must investigate the facts, give fair consideration to a
> settlement offer that is not unreasonable under the facts, and settle, if
> possible, where a reasonably prudent person, faced with the prospect
> of paying the total recovery, would do so. Because the duty of good
> faith involves diligence and care in the investigation and evaluation of
> the claim against the insured, negligence is relevant to the question of
> good faith.

Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980) (citations

omitted).  If an insurance company has more than one insured, it owes a duty to act

in good faith towards both or all of its insureds.  See Contreras v. U.S. Sec. Ins.

Co., 927 So. 2d 16, 21 (Fla. 4th Dist. Ct. App. 2006).

In Florida, an insurer may exhaust policy limits by settling with one insured

even if doing so leaves the other insured exposed, so long as these negotiations are

conducted in good faith.   The cases in which these scenarios have played out

invariably have involved vocal claimants who offer to settle with one insured, yet

refuse to settle with another (whose conduct is oftentimes more egregious than the

settling insured).  Although the "insurer must begin by seeking to protect both

8

insureds,". . . "[i]t is the claimant's refusal to enter a global release that triggers the insurer's duty to reevaluate its approach to the defense . . . ." Adega v. State Farm Fire and Cas. Ins. Co., 2009 WL 3387689, *6 (S.D. Fla. Oct. 16, 2009).  Relying on the latter precept, OneBeacon contends that it was within its rights in settling on behalf of NYCB, even if doing so left Silverhunt exposed to a judgment. OneBeacon ignores a critical fact:  it never sought to protect both of its insureds. Instead, it utterly ignored Silverhunt, by disregarding its duty to defend Silverhunt in the McQuade litigation.

Nonetheless, because Florida law imposes on an insurer the duty to act in good faith, OneBeacon submits that Nova must establish that it acted in bad faith in order to recover damages in excess of the policy limits.  While we are not persuaded by OneBeacon's arguments on that issue, we acknowledge that Florida jurisprudence is, at times, discordant.  Compare Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 331 F. App'x 640, 647 (11th Cir. 2009) (recognizing that breach of contract claims may lie "even in circumstances in which the plaintiff has not or could not assert a bad faith claim."), Hartford Ins. Co. v. Mainstream Constr. Group, Inc., 864 So. 2d 1270, 1271 (Fla. 5th Dist. Ct. App. 2004) (concluding that bad faith claims against an insurer "may only be brought after coverage and contractual issues between the insured and the insurer are resolved . . . ."), Carrousel Concessions, Inc. v. Florida Ins. Guar. Ass'n, 483 So. 2d 513, 516 (Fla.

9

3d Dist. Ct. App. 1986) (finding that breach "can be determined objectively from the insurance contract itself without inquiry into whether the insurer acted in good faith or bad faith"), Caldwell v. Allstate Ins. Co., 453 So. 2d 1187, 1190-91 (Fla. 1st Dist. Ct. App. 1984) (damages in excess of policy limits may be available for breach of contract, even without proof of bad faith), and St. Paul Fire & Marine Ins. Co. v. Thomas, 273 So. 2d 117, 121 (Fla. 4th Dist. Ct. App. 1973) (insurer held liable for excess over policy limits because it was liable for all damages flowing from breach of contract), with Underwriters Guarantee Ins. Co. v. Nationwide Mut. Fire Ins. Co., 578 So. 2d 34, 36 (Fla. 4th Dist. Ct. App. 1991) (court stated in dicta that bad faith allegations, if they exist, must be stated in the complaint), and St. Paul Fire and Marine Ins. Co. v. Lexington Ins. Co., 2006 WL 1295408, *8 n.13 (S.D. Fla. Apr. 4, 2006) (allowing plaintiff leave to amend to restore its previously lodged bad faith claims under equitable subrogation theory but not stating that bad faith allegations were necessary to recovery of damages).

Florida's Second District Court of Appeal spoke at length about this issue in Thomas v. W. World Ins. Co., wherein it firmly concluded that bad faith is not a prerequisite to recovery of excess damages:

> In the case before us, there is no threshold question of "good faith" vs. "bad faith." For here, the company exercised no faith at all. It simply wrongfully refused to comply with its contract to provide a defense on behalf of its insureds. If that breach by insurer caused foreseeable damages to be assessed against its insureds, to that extent the insurer

10

should be held liable.

. . .

An insurer which denies coverage does so at its own risk.  This has been held to be true even where such denial is on a mistaken but honest belief that coverage did not exist.  It seems only fair that an insurer whose contracts are by their very nature "adhesive" should be held to at least the same standard of damages applicable to other contracting parties.  One purchasing coverage should be able to rely upon this. An insurer at least impliedly represents it will be responsible for damages if it fails to provide the contracted for coverage and defense.  The concept of "bad faith" is a viable and useful test for determining damages against an insurance company within the context of settlement negotiations and defense of claims against its insureds.  But, employment of the test presupposes the company is attempting to excise skill, judgment and fidelity on their behalf.

Thomas, 343 So. 2d 1298, 1304 (Fla. 2d Dist. Ct. App. 1977) (internal citations omitted).

In the instant case, we need not decide whether, as a matter of Florida law, bad faith is a prerequisite to Nova's claim, because a bad faith requirement, if one even exists, was not triggered under the facts of this case.  OneBeacon was Silverhunt's primary insurer, while Nova was the excess insurer.  OneBeacon's primary coverage attached immediately upon the happening of an event triggering liability, whereas Nova's excess coverage attached only after a predetermined amount of primary coverage was exhausted.  See Lexington, 2006 WL at *4 (citing King v. Guaranty Nat'l Ins. Co., 440 So. 2d 607 (Fla. 3d Dist. Ct. App. 1983)).  As the primary insurer, OneBeacon was responsible for Silverhunt's settlement with

11

McQuade, up to the limits of its $1 million policy.  See Towne Realty, Inc. v. Safeco Ins. Co. of Am., 854 F.2d 1264, 1268 (11th Cir. 1988); see also Aetna Cas. & Sur. Co. v. Chicago Ins. Co., 994 F.2d 1254, 1258 (7th Cir. 1993) ("[C]ourts will allow the exhaustion of the primary layer of insurance before turning to the excess.").  As the excess insurer, Nova's coverage was not activated until after the first $1 million was paid by OneBeacon's policy.

Despite OneBeacon's arguments to the contrary, we are not convinced that OneBeacon cannot be held liable for the $1 million settlement simply because it had already expended its policy limits when it settled McQuade's suit against NYCB.  Because damages for a breach of contract are measured as of the date of the breach, see Grossman Holdings Ltd. v. Hourihan, 414 So. 2d 1037, 1040 (Fla. 1982), Nova's damages against OneBeacon are measured from the date that OneBeacon refused to defend Silverhunt, and Nova, forced to undertake the obligations of the primary insurer, settled the case for $1.5 million.  Critically, when Nova settled the McQuade action on behalf of Silverhunt, OneBeacon's $1 million policy was intact and available.  Hence, even though OneBeacon subsequently exhausted its primary limits, the breach and the damages are measured at a point in time before that money was spent. OneBeacon's subsequent exhaustion of its policy limits does not excuse its earlier breach, nor do its own erroneous acts inure to its benefit by absolving it of liability.  OneBeacon cannot

12

unilaterally create an "excess policy" case and then evade liability by complaining that it exhausted its primary limits. "When an insurer has a duty to defend the insured, there should be no reward to the insurer for breaching that duty." Cont'l Cas. Co. v. United Pac. Ins. Co., 637 So. 2d 270, 278 (Fla. 5th Dist. Ct. App. 1994) (citations omitted) (discussing contribution for a share of the cost of defense).

Although OneBeacon was permitted to conduct a thorough investigation to determine whether there was coverage under its policy, the law plainly provides that "the company acts at its peril in refusing to defend its insured and will be held responsible for the consequences." Florida Farm Bureau Mut. Ins. Co. v. Rice, 393 So. 2d 552, 556 (Fla. 1st Dist. Ct. App. 1980); Ernie Haire Ford, Inc., 331 F. App'x at 647 (same); Carrousel Concessions, Inc., 483 So. 2d at 516 ("If the insurer breaches its duty to defend, it-- like any other party who fails to perform its contractual obligations-- becomes liable for all damages naturally flowing from the breach."). Indeed, when it is "subsequently determined that the company erroneously denied coverage, the company will be liable for damages for breach of its agreement," Caldwell, 453 So. 2d at 1191, even if its mistake was an honest one. See Thomas, 343 So. 2d at 1304; St. Paul Fire & Marine Ins. Co., 273 So. 2d at 121-22. OneBeacon chose its course of action with full knowledge of the fact that Silverhunt was looking to OneBeacon for coverage. See Am. Fid. Fire Ins. Co. v. Johnson, 177 So. 2d 679,  683 (Fla. 1st Dist. Ct. App. 1965) ("Having

13

chosen to step aside, American Fidelity cannot now receive the benefit of any different course it might have pursued had it taken command of the litigation."). OneBeacon's steadfast refusal to defend Silverhunt based on its erroneous belief, even if honestly held, that Silverhunt was not covered under its policy was at its "peril." Rice, 393 So. 2d 556.  As the Seventh Circuit has explained, "it is a bad idea to inform insurance carriers that whichever is least faithful to its obligation to the insured will escape all liability as long as a responsible carrier covers the loss." W. Cas. & Surety Co. v. W. World Ins. Co., Inc., 769 F.2d 381, 383 (7th Cir. 1985).  The burden of funding $1 million of the Silverhunt-McQuade settlement falls squarely on OneBeacon's shoulders.

## IV.    CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment as to the determination of damages and **REMAND** for further proceedings, consistent with this opinion.