NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TANK TECH, INC., a foreign corporation,  )
  )
        Appellant,  )
  )
v.  )     Case No. 2D16-2100
  )
VALLEY TANK TESTING, L.L.C., a  )
foreign limited liability company,  )
  )
        Appellee.  )
_____)

Opinion filed April 20, 2018.

Appeal from the Circuit Court for
Hillsborough County; Claudia R. Isom,
Judge.

Thomas J. Guilday, Robert D. Fingar,
George W. Hatch, III, and Catherine B.
Chapman of Guilday, Simpson, West,
Hatch, Lowe & Roane, P.A., Tallahassee,
for Appellant.

Christine A. Marlewski of Gray|Robinson,
P.A., Tampa (withdrew after briefing);
Andrew J. Mayts and Alissa M. Ellison
of Gray|Robinson, P.A., Tampa
(substituted as counsel of record), for
Appellee.


MORRIS, Judge.

        Tank Tech, Inc., appeals a final summary judgment entered in favor of

Valley Tank Testing, L.L.C. (Valley Tank), on claims of equitable subrogation (count I),

negligence (count III), and indemnification (count IV).[1]  The complaint was the product of a dispute between Tank Tech and Valley Tank regarding which of the two entities caused damage to underground petroleum storage tanks (USTs) at various Circle K stores.  Tank Tech had been hired to modify the USTs by adding a second interior wall inside of them while Valley Tank had been hired to test the interstitial space between the original UST walls and the newly added walls.  As a result of the damage, Tank Tech was required to repair the damaged USTs.  Tank Tech then sued Valley Tank to recover the repair costs and other losses.  Ultimately, the trial court entered summary judgment on the claims.

On appeal, Tank Tech argues that summary judgment was improper because (1) there were genuine issues of material fact regarding the equitable subrogation claim; (2) the trial court erred in finding that Valley Tank owed no duty to Tank Tech and that there was no factual basis to show that Valley Tank was negligent in its testing of the USTs; (3) Valley Tank's failure to meet the presumption set forth in Public Health Trust of Dade County v. Valcin, 507 So. 2d 596 (Fla. 1987), precluded entry of summary judgment; and (4) there were genuine issues of material fact regarding which of the two entities caused the damage for purposes of the indemnification claim.  We agree with Tank Tech on the issue of equitable subrogation and thus reverse the final summary judgment entered on that claim.  However, for the reasons explained herein, we conclude that the trial court did not err in granting final summary judgment on the claims for negligence and indemnification.  We do not

---

[1]Tank Tech does not challenge the portion of the final judgment granting summary judgment on a claim for tortious interference with a business relationship (count II).

address the remaining issues raised by Tank Tech as they either lack merit or do not materially contribute to our disposition.

**BACKGROUND**

USTs are heavily regulated by both the federal and state governments in an effort to minimize the impact on the environment and the health and welfare of the surrounding community.  See, e.g., 42 U.S.C. § 6991 (1995); Fla. Admin. Code. Ch. 62-761, et seq.  The Florida Department of Environmental Protection (FDEP) adopted regulations requiring UST owners to either upgrade existing USTs with a secondary containment system or to close the UST systems on or before December 31, 2009. See Fla. Admin. Code R. 62-761.510(3) & (5).[2]  Where secondary containment systems were employed, the regulations required UST owners to internally monitor the interstitial space between the original tank wall and the secondary tank wall.  See Fla. Admin. Code R. 62-761.610, .640.[3]

Tank Tech manufactures and installs the Phoenix System, which is a technology approved by the FDEP to retrofit existing USTs with a secondary containment system.  Valley Tank is an entity that performs the required testing of the interstitial space and was retained by the affected UST owners to perform the testing. Valley Tank used a procedure known as the Estabrook Method, which was approved as a testing method by the FDEP only "where the groundwater depth is verified."  The Estabrook Method includes specifications related to the amount of pressure that is

---

[2]Rule 62-761.510 was repealed on January 11, 2017, though it was in effect at the time of this action.

[3]Rules 62-761.610 and 62-761.640 were also repealed on January 11, 2017.

applied during the testing as well as to how the groundwater level affects the testing.

Specifically, the Estabrook Method provides in relevant part that:

> **Test Pressure** . . . Pressure differential across tank wall is equal to the absolute value of vacuum applied to tank, plus pressure of tank excavation backfill on tank, plus groundwater pressure on tank, minus pressure of liquid in tank.
>
> . . . .
>
> **Groundwater** Groundwater level in tank excavation backfill must be determined by observation well or soil probe in tank excavation backfill.
> If groundwater level in tank excavation backfill is above bottom of tank or the groundwater level in the tank excavation backfill has not been determined, water sensor must be used and test time extended to ensure water [i]ngress detection during test.
>
> **Comments** . . . An observation well or soil probe in tank excavation backfill may help determine backfill material, water level in tank excavation backfill, and free product. . . . More than 4 psi pressure differential across the tank wall at any location in the tank could damage the tank.

The groundwater level table is an important factor during testing because the Estabrook Method applies a vacuum to the tank, causing the tank walls to flex inward. Likewise, water located outside of the tank puts pressure on the exterior tank walls causing them to deflect inward.

After retrofitting the affected tanks with the Phoenix System, Tank Tech was notified by Circle K and other customers that USTs were failing. Tank Tech investigated and determined that there was a correlation between cracks appearing in the USTs and high water level tables. In an effort to learn about how the affected USTs were tested, Tank Tech had one of its employees attend a course on the Estabrook Method. Tank Tech alleges that it learned that Valley Tank was testing the affected USTs as if they were located in a dry hole and that Valley Tank had not been making an

allowance for groundwater pressure. Tank Tech hired John Cignatta, P.E., Ph.D., who opined in an affidavit that if excessive vacuum force was used, it would cause the tank walls to repeatedly flex inward and that, over time, the structural integrity of the tanks would break down, resulting in cracks that could allow fuel to enter the interstitial space. Dr. Cignatta also opined that if the Estabrook Method had been properly employed in a manner not contrary to manufacturer recommendations or FDEP protocols, the damage to the affected tanks would not have occurred.

Valley Tank acknowledged that it did not verify groundwater depth prior to testing. However, Valley Tank maintains that it did not damage the tanks during its testing. Valley Tank contends that the creator of the Estabrook Method, Brad Estabrook, opined in an affidavit that groundwater levels do not need to be factored in when employing the Estabrook Method. Valley Tank also argues that Tank Tech presented no evidence that the groundwater levels at the sites of any of the affected tanks contributed to Valley Tank's pressurizing the tanks at a level that would result in damage. Indeed, Valley Tank asserts that Tank Tech failed to rule out other potential causes of the cracks or pinholes in the affected tanks.

Although Tank Tech and Valley Tank each had their own contracts with Circle K to provide different services, Tank Tech and Valley Tank did not have a contract with each other. Notably, Tank Tech's contract with Circle K required Tank Tech to repair any damage to the containment systems installed on Circle K's USTs regardless of whether the damage was caused by an action and/or omission of Tank Tech or by a third party. It is undisputed that Circle K, in turn, was responsible to ensure that any integrity tests conducted on USTs containing the Phoenix System were carried out pursuant to applicable regulations and recommendations.

Ultimately, Valley Tank moved for summary judgment, which the trial court granted. Tank Tech filed a motion for rehearing and/or reconsideration as to counts I, III, and IV. The trial court granted rehearing, but upheld its earlier ruling and added that Valley Tank did not owe a duty to Tank Tech. The trial court also made an oral finding that it did not believe that Tank Tech had established a factual basis that Valley Tank was negligent. Final judgment was entered in favor of Valley Tank, resulting in this appeal.

## ANALYSIS

The party moving for summary judgment has the burden of demonstrating that there is no genuine issue of material fact. Holl v. Talcott, 191 So. 2d 40, 43 (Fla. 1966). "The proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party." Id. (citing Harvey Bldg., Inc. v. Haley, 175 So. 2d 780 (Fla. 1965)). Once a party moving for summary judgment presents competent, substantial evidence to support the motion, "the opposing party must come forward with counterevidence sufficient to reveal a genuine issue." Landers v. Milton, 370 So. 2d 368, 370 (Fla. 1979) (emphasis added). "It is not enough for the opposing party merely to assert that an issue does exist." Id. (citing Harvey Bldg., Inc., 175 So. 2d 780). Summary judgment should not be granted if there is any doubt about whether a genuine issue of material fact exists. See Pyjeck v. ValleyCrest Landscape Dev., Inc., 116 So. 3d 475, 477 (Fla. 2d DCA 2013). Rather, "[s]ummary judgment is [only] proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000) (citing Menendez v. Palms W. Condo. Ass'n, 736 So. 2d 58 (Fla. 1st DCA 1999)). We therefore review an order granting summary judgment de novo. Id.

- 6 -

## I. Valley Tank was not entitled to summary judgment on the claim of equitable subrogation.

"Subrogation provides an equitable remedy for restitution to one who in the performance of some duty has discharged a legal obligation which should have been met, either wholly or partially, by another." W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So. 2d 204, 206 (Fla. 5th DCA 1986). "Legal subrogation . . . is a creature of equity that does not depend on contract, but which follows as a legal consequence of the acts and relationship of the parties." Id. at 207. "The doctrine places 'one party into the shoes of another so that the substituting party retains the rights, remedies, or securities that would otherwise belong to the original party.' " Columbia Bank v. Turbeville, 143 So. 3d 964, 968 (Fla. 1st DCA 2014) (quoting Aurora Loan Servs. LLC v. Senchuk, 36 So. 3d 716, 722 (Fla. 1st DCA 2010)).

> Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect [its] own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.

Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999).

Here, in opposition to Valley Tank's motion for summary judgment, Tank Tech presented Dr. Cignatta's April 20, 2015, affidavit wherein he noted that the manual for the Estabrook Method requires that the groundwater level must be determined during testing and that the FDEP letter approving the use of the Estabrook Method specifies that the method is approved "where the groundwater depth is verified." Dr. Cignatta opined that if a technician fails to check the groundwater depth, "all of the pressure calculations for the test will be incorrect." Thus, according to Dr. Cignatta, because Valley Tank failed to verify the groundwater depths around a given tank, it

"violated the manufacturer's recommendations and the state limitation on the use of [the Estabrook] testing protocol." Dr. Cignatta further opined that failing to account for the groundwater depth and thus applying the incorrect pressure to a UST can damage it. He opined that due to the deviations from the testing requirements, Valley Tank subjected the secondary liners to excessive forces which caused them to fail and, therefore, Valley Tank was responsible for the damages caused to the USTs. Dr. Cignatta rejected Valley Tank's assertions that pinholes that develop when the secondary liner is installed were "indicative of poor or unsatisfactory work" by Tank Tech; rather, he opined that Tank Tech's quality control program "finds and repairs such conditions before the completed tank is returned to the owner." He also noted that he personally witnessed Tank Tech's employees touching up several pinhole spots, and he explained that "[w]ith the thicker coating of epoxy at the earlier pin hole [sic] site, a recurrence of a problem at that location is simply not possible."

In a subsequent affidavit that was filed on February 2, 2016, in conjunction with Tank Tech's motion for rehearing and/or reconsideration, Dr. Cignatta expounded on the materials that he relied on in reaching his conclusions. He specifically referred to: (1) Tank Tech's Amended Complaint; (2) Valley Tank's Answer to the Amended Complaint; (3) Tank Tech's installation files for sites retrofitted with the Phoenix System in Florida; (4) documents produced by Valley Tank in connection with this litigation; (5) Tank Tech's repair files on sites retrofitted with the Phoenix System; (6) information maintained by FDEP pertaining to matters such as the Phoenix System, the EZY Check System (the Estabrook Method), and the Braddock Method (another method of testing); and (7) depositions of both Tank Tech and Valley Tank corporate representatives. He explained that his opinions were based upon his knowledge and experience as a

- 8 -

professional engineer specializing in fuel systems and environmental engineering, his familiarity with state and national regulations and guidelines as well as standards promulgated by industry work groups and third party certifications, and his review of the cited documents. He subsequently explained that in addition to being provided with Valley Tank's records, he had also been provided with "information concerning groundwater levels at locations where testing occurred." He then listed three separate testing locations where Valley Tank purportedly performed testing. He explained that Valley Tank did not check the groundwater levels at the specified locations. He detailed what the pressure levels were according to Valley Tank's records and then explained what the pressure levels would be if the groundwater level had been factored in. He further explained that the maximum amount of negative pressure that can be applied to the USTs using the Estabrook Method is -4 psi, and he explained that in each of the three specified locations, the pressure level—after accounting for the groundwater levels—exceeded that amount. With regard to one specific location, Dr. Cignatta also explained that Valley Tank's records reflected that the diameter of the UST had shrunk approximately four inches, and he opined that "[t]his is indicative of the tank being pushed inward during the test [with] the most likely explanation [being] that the excessive vacuum caused the crushing action on the tank." He concluded the affidavit by opining "within a reasonable degree of certainty that the application of excess negative pressure on the USTs by Valley Tank more likely than not caused the tank failures."

In arguing that we should affirm the final summary judgment, Valley Tank takes issue with Dr. Cignatta's April 20, 2015, affidavit as not being based on personal knowledge, as not setting forth admissible facts, and as not demonstrating that he was

competent to testify on the issues. Valley Tank asserts that the affidavit fails to detail the evidence on which Dr. Cignatta relied. While Valley Tank acknowledges that Dr. Cignatta's February 2, 2016, affidavit lists the documents on which he relied in forming his opinions, Valley Tank asserts that it "does not specifically detail documents he reviewed to make the calculations that he claims show Valley Tank exceeded the pressure the Estabrook manual indicated could damage the tanks, nor does it indicate why the additional statements could not have been made in his first affidavit." Valley Tank also more specifically challenges Dr. Cignatta's failure to explain the scientific theories and/or formulas he used to reach his conclusions.

We reject the suggestion that Dr. Cignatta was required to detail all of the technical information on which he relied in his affidavit in order to preclude entry of summary judgment. Where the defendant is the party moving for summary judgment, as here, "neither the trial court nor this court determines whether the plaintiff can prove [its] case; our function solely is to determine whether the pleadings, depositions, and affidavits conclusively show that the plaintiff cannot prove [its] case." Crandall v. S.W. Fla. Blood Bank, Inc., 581 So. 2d 593, 595 (Fla. 2d DCA 1991) (citing Williams v. Fla. Realty & Mgmt. Co., 272 So. 2d 176 (Fla. 3d DCA 1973)); see also Visingardi v. Tirone, 193 So. 2d 601, 604 (Fla. 1966) (explaining that party opposing summary judgment is not required "to make out his whole case before his affidavit is admissible"). Here, Dr. Cignatta's affidavits prevent us from concluding that Tank Tech cannot prove its case.

Further, to the extent that Valley Tank asserts that the February 2, 2016, affidavit should not have been considered because it was not submitted prior to the original summary judgment hearing, we disagree. Florida Rule of Civil Procedure

- 10 -

1.510(e)[4] specifically contemplates that affidavits supporting or opposing summary judgment may be supplemented by further affidavits. At the time that the February 2, 2016, affidavit was filed, the trial court had not yet entered final judgment. "It is well established that a trial court may reconsider and modify interlocutory orders at any time until final judgment is entered." LoBello v. State Farm Fla. Ins. Co., 152 So. 3d 595, 600 (Fla. 2d DCA 2014) (quoting Oliver v. Stone, 940 So. 2d 526, 529 (Fla. 2d DCA 2006)). Thus, even though the trial court had technically granted summary judgment on count I, it was still free to consider the supplemental affidavit, especially where, as in this case, the supplemental affidavit provided factual support for opinions already made in the original affidavit. See Stephens v. Dichtenmueller, 216 So. 2d 448, 450 (Fla. 1968) (explaining that failure to demonstrate competency and vagueness were technical deficiencies in an affidavit that may have been amenable to correction in a supplemental affidavit).

Tank Tech's contract with Circle K obligated it to repair damages to the USTs. But Tank Tech's contractual obligation to Circle K did not convert Tank Tech into a "volunteer" to pay for damages caused by a third party and thus did not prevent the application of the equitable subrogation doctrine. Cf. W. Am. Ins. Co., 495 So. 2d at

---

[4]In support of its argument for affirming the final summary judgment, Valley Tank also argues that Dr. Cignatta's affidavit violated rule 1.510(e) because Tank Tech failed to attach "sworn or certified copies of all papers or parts thereof referred to" in the affidavit. However, in the proceedings below, while Valley Tank challenged Dr. Cignatta's affidavit as generally being inadmissible, containing hearsay, and lacking a factual basis, Valley Tank did not argue that the affidavit should not be considered because the documents Dr. Cignatta referred to were not attached to the affidavit. Thus because the trial court did not have the opportunity to make a factual finding regarding that issue, we will not employ the tipsy coachman doctrine or make the factual finding in the first instance. See In re Estate of Assimakopoulos, 228 So. 3d 709, 715 n.3 (Fla. 2d DCA 2017) (refusing to apply tipsy coachman doctrine where issue raised on appeal depended on a factual finding that was not made by trial court below); Bueno v. Workman, 20 So. 3d 993, 998 (Fla. 4th DCA 2009) (same); Bryant v. Fla. Parole Comm'n, 965 So. 2d 825, 825 (Fla. 1st DCA 2007) (same).

207 ("Subrogation in equity is not available to a mere volunteer or stranger who, without any duty or obligation to intervene and without being so requested, pays the debt of another."). Instead, Tank Tech was merely fulfilling its <u>legal obligation</u> to Circle K which was a necessary means of protecting itself from liability to Circle K. And Tank Tech, by virtue of Dr. Cignatta's affidavit, established a genuine issue of material fact regarding whether Tank Tech or Valley Tank was primarily liable for the damages. If Tank Tech is ultimately successful in proving that Valley Tank caused the damage to the USTs, then it would be entitled to seek any damages it incurred as a result of having to repair the damaged USTs. See <u>id.</u> ("The [equitable subrogation] doctrine is based on the policy that no person should be unjustly enriched by another's loss, and may be invoked wherever justice demands its application, irrespective of technical legal rules."). To hold that Tank Tech is precluded from pursuing a claim for subrogation would leave Tank Tech without a remedy, a "most unfair and inequitable result." <u>Id.</u> at 206. Because the evidence, when viewed in a light most favorable to Tank Tech, establishes at least the possibility of genuine issues of material fact, the trial court should have denied summary judgment on count I.

## II. The trial court properly determined that Valley Tank did not have a duty to Tank Tech.

In count III of its complaint, Tank Tech argued that Valley Tank was negligent in its testing and that, as a result, Tank Tech suffered damages by having to repair the USTs under its contract with Circle K. Tank Tech argued that Valley Tank had a duty to perform the testing with due care and that the USTs were damaged as a direct and proximate result of Valley Tank's failure to properly perform the testing. Tank Tech also argued that Valley Tank's conduct created a foreseeable zone of risk

encompassing Tank Tech since Valley Tank knew that Tank Tech had installed the secondary tanks and was responsible for repairing any defects.

In granting final summary judgment on this claim, the trial court determined that the negligence count failed as a matter of law for two reasons: because Valley Tank did not owe a duty to Tank Tech and because there was no factual support to establish that Valley Tank was negligent. We agree that the claim fails as a matter of law.

There are four elements of a negligence claim: duty, breach of that duty, proximate cause, and actual loss or damage. Jackson Hewitt, Inc. v. Kaman, 100 So. 3d 19, 27-28 (Fla. 2011). "Of the four elements of a negligence claim, breach, causation, and damages are generally questions to be decided by the trier of fact." Id. at 28 (citing Estate of Johnson v. Badger Acquisition of Tampa LLC, 983 So. 2d 1175, 1180 (Fla. 2d DCA 2008)). "However, the determination of whether a duty is owed presents a question of law to be determined by the court." Id. (citing Estate of Johnson, 983 So. 2d at 1180). "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." Id. (quoting Jenkins v. W.L. Roberts, Inc., 851 So. 2d 781, 783 (Fla. 1st DCA 2003)).

"Florida . . . recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992). Thus, "[w]here a defendant's conduct creates a *foreseeable zone of risk*, the law generally will recognize a duty placed upon [the] defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Id. (quoting Kaisner, 543 So. 2d at 735). Indeed, "each defendant who creates a risk is required to exercise prudent

- 13 -

foresight whenever others may be injured as a result.  This requirement of reasonable, general foresight is the core of the duty element."  Id.

However, this case is not based solely in tort law.  Rather, in this case, principles of both contract and tort law are involved, and it is because of that fact that Tank Tech's negligence claim fails.  In Monroe v. Sarasota County School Board, 746 So. 2d 530, 534 n.6 (Fla. 2d DCA 1999), we analyzed negligence claims based solely on economic loss (rather than bodily injury or property damage), which is the type of loss at issue here:

> [W]e suspect that the relationship between the plaintiff and the defendant is the critical factor in determining whether a negligence cause of action exists.  In negligence law, the concept of "duty" has two components: (1) the relationship that justifies placing a requirement of care upon the defendant, and (2) the general standard of care that defines the risks to be foreseen by the defendant and the level of care to be imposed upon the defendant.  See Spadafora v. Carlo, 569 So. 2d 1329 (Fla. 2d DCA 1990); Dennis v. City of Tampa, 581 So. 2d 1345 (Fla. 2d DCA 1991); Bryant v. Lucky Stores, Inc., 577 So. 2d 1347, 1351 n.2 (Fla. 2d DCA 1990) (Altenbernd, J., concurring in part and dissenting in part).  Difficult economic loss cases all seem to examine the relationship between the parties to determine whether it warrants creating a duty to protect economic interests outside contract and statutory law.

(Emphasis added.)  Thus, in order to proceed on a common law negligence claim based solely on economic loss, there must be some sort of link between the parties or some other extraordinary circumstance that justifies recognition of such a claim.  See Monroe, 746 So. 2d at 531 (holding that the general rule is "that bodily injury or property damage is an essential element of a cause of action in negligence," but recognizing that that essential element could be waived "under extraordinary circumstances which clearly justify judicial interference to protect a plaintiff's economic expectations"); Limones v. Sch. Dist. of Lee Cty., 161 So. 3d 384, 389 n.5 (Fla. 2015) ("Of course, as McCain[, 593

- 14 -

So. 2d at 503-04] acknowledges, some facts must be established to determine whether a duty exists, such as the identity of the parties, their relationship, and whether that relationship qualifies as a special relationship recognized by tort law and subject to heightened duties."); DaimlerChrysler Ins. Co. v. Arrigo Enters., 63 So. 3d 68, 74 (Fla. 4th DCA 2011) ("The existence of a legal duty means that a defendant stands in a 'relation to the plaintiff as to create [a] legally recognized obligation of conduct for the plaintiff's benefit.' " (alteration in original) (quoting Biglen v. Fla. Power & Light Co., 910 So. 2d 405, 408 (Fla. 4th DCA 2005))).[5]

The reason why the negligence claim fails here is because there is neither a special relationship between Valley Tank and Tank Tech nor any extraordinary circumstance that would require imposition of a duty. Tank Tech's injury did not flow from Valley Tank's testing of the USTs. Instead, Tank Tech seeks to recover the money it spent in repairing the USTs, an expense that was the result of a negotiated contract between Tank Tech and Circle K. There was no contract between Valley Tank and Tank Tech obligating Valley Tank to repair any USTs it damaged during testing or otherwise obligating Valley Tank to repay Tank Tech for the expenses incurred pursuant to Tank Tech's contract with Circle K. And Valley Tank's testing did not cause any

---

[5]Cf. Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 308-09 (1927) (explaining that respondent's loss was not due to the petitioner's conduct but instead "arose only through [respondent's] contract with the owners" and noting that "as a general rule . . . a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong" (citation omitted)); Indem. Ins. Co. of N. Am. v. Am. Aviation, 891 So. 2d 532, 546 (Fla. 2004) (Cantero, J., concurring) (explaining that "[t]he 'duty' prong remains a strong filter" in cases involving only economic damages and that "the plaintiff still must demonstrate an independent duty to protect that plaintiff's purely economic interests"), receded from by Tiara Condo. Ass'n v. Marsh & McLennan Cos., 110 So. 3d 399 (Fla. 2013).

personal injury or property damage to Tank Tech, the types of injuries for which the common law of negligence has historically permitted recovery. See McCain, 593 So. 2d at 504 (holding that electric utility company that failed to maintain underground power lines owed a legal duty to trencher operator who was electrocuted and injured by a live cable).

We are cognizant of the fact that the Florida Supreme Court has acknowledged at least one extraordinary circumstance where it found the existence of a duty between two parties who had no contractual privity. See Curd v. Mosaic Fertilizer, LLC, 39 So. 3d 1216, 1228 (Fla. 2010). There, the court determined that the fertilizer company owed commercial fisherman a special duty due to the nature of the company's business. Id. The court also concluded that the fishermen's interest was not one that was shared by the public as a whole because the fishermen had a protectable economic expectation in the marine life (i.e., a property right), which was damaged by the fertilizer company's negligent release of pollutants. Id.

In this case, no property right was involved. And unlike the commercial fishermen in Curd, Tank Tech has no special and unique interest that would constitute an extraordinary circumstance warranting the imposition of a duty on Valley Tank. This is simply a case of a party attempting to bring a tort claim to recover monies that it spent as a result of a contractual obligation to a third party. But negligence claims cannot proceed based on a party's desire to relieve itself from a bad bargain. Because Tank Tech seeks only economic damages here and because there is no special relationship between Valley Tank and Tank Tech, we hold that the trial court correctly determined that Valley Tank owed no duty to Tank Tech. Absent the existence of a duty, the negligence claim fails, see Kaman, 100 So. 3d at 28, and we need not address the

- 16 -

issue of whether the trial court erred in finding that there was no factual basis to establish that Valley Tank was negligent in its testing of the USTs.

### III. The trial court properly granted final summary judgment on the indemnification claim.

> For a party to prevail on a claim of common law indemnity, the party must satisfy a two-prong test. First, the party seeking indemnification must be without fault, and its liability must be vicarious[6] and solely for the wrong of another. See K–Mart Corp. v. Chairs, Inc., 506 So. 2d 7, 9-10 (Fla. 5th DCA 1987). Second, indemnification can only come from a party who was at fault. See Federal Ins. Co. v. Western Waterproofing Co., 500 So. 2d 162, 165 (Fla. 1st DCA 1986); see also State Dep't of Transp. v. Southern Bell Tel. & Tel. Co., 635 So. 2d 74, 77 (Fla. 1st DCA 1994). Additionally, Florida courts have required a special relationship[7] between the parties in order for common law indemnification to exist. See Houdaille Indus., Inc. v. Edwards, 374 So. 2d 490, 493 (Fla. 1979).

Dade Cty. Sch. Bd., 731 So. 2d at 642; see also Rosenberg v. Cape Coral Plumbing, Inc., 920 So. 2d 61, 65 (Fla. 2d DCA 2005). "In Florida, actions for indemnity have been restricted to situations involving either a duty, an express contract, or the existence of active and passive negligence." Hiller Grp., Inc. v. Redwing Carriers, Inc., 779 So. 2d 602, 603 (Fla. 2d DCA 2001). But as we have already explained, there was no duty flowing from Valley Tank to Tank Tech and, as a result, there can be no negligence on the part of Valley Tank. There was also no express contract between the parties. Consequently, Tank Tech's indemnification claim fails as a matter of law.

---

[6]An indemnitee's liability can also be constructive, derivative, or technical in nature. See Joint Med. Prods. Corp. v. NME Hosps., Inc., 610 So. 2d 675, 676 (Fla. 2d DCA 1992).

[7]Courts have interpreted "special relationship" to "merely describe[] a relationship which makes a faultless party 'only vicariously, constructively, derivatively, or technically liable for the wrongful acts' of the party at fault." Fla. Peninsula Ins. Co. v. Ken Mullen Plumbing, Inc., 171 So. 3d 194, 196 (Fla. 5th DCA 2015) (quoting Diplomat Props. Ltd. P'ship v. Tecnoglass, LLC, 114 So. 3d 357, 362 (Fla. 4th DCA 2013)).

**Conclusion**

Because Tank Tech established that there were genuine issues of material fact relating to the equitable subrogation claim, the trial court erred by granting final summary judgment on that claim. However, because the trial court correctly determined that, as a matter of law, Valley Tank owed no duty to Tank Tech, the trial court properly granted final summary judgment on the negligence claim. Similarly, the trial court properly granted final summary judgment on the claim for indemnification where there was no duty, express contract, or negligence on the part of Valley Tank that would constitute the basis for such a claim.

Affirmed in part, reversed in part, and remanded for further proceedings.

NORTHCUTT and LUCAS, JJ., Concur.